**UNITED STATES of America,**
**Plaintiff,**

v.

**John Steven RUNDLE, Defendant.**

**Crim. No. 4-1255-C.**

United States District Court
S. D. Iowa, C. D.

Oct. 22, 1968.

James P. Rielly, U. S. Atty., Des Moines, Iowa, for plaintiff.

Lawrence LeTourneau, Des Moines, Iowa, for defendant.

## MEMORANDUM AND ORDER

STEPHENSON, Chief Judge.

On February 15, 1968, the Grand Jury indicted the defendant, John Rundle, on the charge of wilfully and knowingly failing and neglecting to comply with an order of his local Selective Service Board to report for and submit to induction in the armed forces of the United States, in violation of 50 App.U.S.C. § 462. The defendant waived a jury trial in writing and requested that he be tried by the Court. The Government consented thereto. The case was tried to the Court on April 15, 1968. Final Briefs were filed August 15, 1968.

The chronological sequence of events giving rise to the charge herein was brought out at trial and stands largely undisputed. Further, many of these events are evidenced by defendant's Selective Service file (Exhibit 1) which was admitted into evidence without objection. Defendant first registered with the Selective Service System on December 12, 1962, at Local Board No. 13–86 of Ames, Iowa, hereafter referred to as Local Board. On December 4, 1963, the defendant was classified I-A(3) by the Local Board. On July 15, 1964, defendant was reclassified to II-S, the student deferment classification, until October, 1964. On November 18, 1964, defendant was again classified I-A(3). The Classification Memorandum contains the notation "No SSS 109 rcvd." The Form 109 referred to is a form to be utilized by schools to notify local draft boards of the student status of registrants.

On February 24, 1965, the Local Board mailed defendant a notice to report for an armed forces physical examination. The defendant's file contains a memorandum, however, that on February 25, 1968, the Clerk of the Local Board received a telephone call from the Registrar's Office at the University inform-

ing the Local Board that defendant was registered as a full time student. On this basis the order to report for physical was cancelled and on May 12, 1965, defendant was reclassified II-S after receipt of a Form 109 from the University.

On December 28, 1965, the Local Board received a Form 109 from the University notifying them that defendant was no longer enrolled. Defendant was then reclassified I-A(3). Upon receipt of another Form 109 on January 31, 1966, which informed the Local Board that defendant was again a student, he was again reclassified II-S. Defendant remained in this classification until June 15, 1966, when he was classified I-A(3) for the following stated reason:

"Not progressing—should have graduated June 1966—states now May 1967" This was changed again to II-S, however, after the defendant notified them that he had actually started college in September 1963, and, therefore, was not due to graduate until June, 1967.

On December 27, 1966, the Local Board received a Form 109 from the University stating that defendant was no longer enrolled (Exhibit 1–D). On this basis defendant was placed in the I-A(3) category (Exhibit 1–E). The selective service file indicates defendant made an oral inquiry about this classification, but did not appeal therefrom. On February 13, 1967, the Local Board received a Form 109 indicating the defendant was a full-time student. Apparently no action was taken on this notice, and on April 4, 1967, the Local Board received another Form 109 notifying them defendant was no longer enrolled (Exhibit R).

On May 5, 1967, defendant was mailed a notice to report for induction on June 28, 1967. The Selective Service file reveals that on May 8, 1967, defendant appeared at the office of the Local Board and inquired as to whether he would be able to complete his degree. The memorandum of that conversation (Exhibit 1–B) shows that he was told to have his school verify his full-time enrollment. At this time the defendant also submitted letters regarding his acceptance by the Peace Corps for training. The file further reveals that on May 9, 1967, the Clerk of the Local Board telephoned the University Registrar's Office and was informed they would not send another Form 109 "until his situation there is cleared up." (Exhibit 1–A). Defendant appeared at the office of the Local Board again on May 10, 1967, and submitted a lengthy letter detailing his objections to the war in Vietnam and requesting a return to the student classification of II-S (Exhibit 1–I). On May 11, 1967, the defendant submitted an application for a draft deferment in order to serve in the Peace Corps (Exhibit 1–J). On May 12, 1967, the Local Board received a Form 109 from the University indicating that defendant was a full-time student for the semester ending in May, 1967.

The Clerk of the Local Board wrote defendant on June 9, 1967, and requested that he authorize the release of the following information from the University Registrar's Office (Exhibit 1–K):

"1. Credit hours earned spring '67 quarter.

2. Credit hours needed for graduation and the expected date of graduation.

3. Verification, if enrolled now for summer session."

This request apparently was not complied with, because the file contains a further notation entered by the Clerk on June 19, 1967, as follows (Exhibit 1–L):

"I called the University today and he has not authorized them to release any information nor is he enrolled for summer session to complete his degree in Aug.

"I have repeatedly tried to contact him by phone and he has not returned the call."

The evidence at trial indicated the above statement to be true, and, in fact, defendant never returned to the University to complete the requirements for his degree.

There was no further contact with the defendant until June 21, 1967. At that time defendant appeared at the Local Board and requested Form 150, a questionnaire to be used to apply for conscientious objector status. The Form 150 (Exhibit 1–O) was filled out and returned to the Local Board on June 23, 1967. The Clerk of Local Board immediately sent defendant's file to Colonel Bowles, the State Director of Selective Service, for his recommendation (Exhibit 1–D). On June 26, 1967, the Clerk received a telephone call from Colonel Ash, Legal Advisor to the Selective Service System, to the effect that the file had been reviewed and the Form 150 should be considered by the Local Board, but recommended that the classification not be reopened as the Form 150 was untimely filed. This was confirmed in a letter (Exhibit 1–T) which was received with the file on June 27, 1967.

Because the induction date of defendant was only two days away, the Clerk felt it would be to defendant's advantage to know immediately the result of any action to be taken by the Local Board. For this reason, the Clerk called each of the members of the Local Board and advised them of Colonel Ash's recommendation. Each of the members voted not to reopen the classification of defendant. Therefore, on that date, June 26, 1967, the Clerk sent a letter to defendant notifying him his request for conscientious objector status was denied (Exhibit 1–U). The next day, June 27, 1967, when defendant's file was returned to the Local Board, the members of the Local Board separately reviewed the file and initialed the classification memorandum (Exhibit 1–R).

The defendant apparently reported on June 28, 1967, but induction was postponed until January 8, 1968, in order that he could be given another physical examination. The only other contact defendant had with the Local Board was on January 5, 1968, when he appeared at the Office of the Local Board, reviewed his file, and submitted a letter of appeal.

It is not disputed that on January 8, 1968, the defendant reported as ordered, but refused to submit to induction. At the end of the Government's evidence and at the conclusion of the trial, however, the defendant submitted a written motion of acquittal, filed herein, on the ground that the actions of the Local Board were arbitrary and capricious and violated the requirements of procedural due process. In this regard, the defendant makes two basic contentions, which are stated as follows:

"1. The classification of defendant from II-S to I-A and the subsequent refusal to classify defendant I-S was legally invalid and denied defendant basic procedural fairness so as to render any finding that defendant refused to be inducted not an unlawful act in the circumstances.

"2. The manner in which the local selective service board handled and disposed of defendant's claim to be a conscientious objector and his request for a change of classification was legally invalid and a denial of due process so as to render any finding that defendant refused to be inducted not an unlawful act in the circumstances."

The contentions of defendant will be considered in the above order.

■ In considering these contentions the Court notes that the Selective Service Act provides that decisions of the local boards are final. (50 U.S.C. App. § 460(b) (3).) In the leading and much cited case of Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567 (1946) the Supreme Court said:

"The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local

boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

Therefore, the scope of review of local board decisions is very limited and the range of review is the narrowest known to the law. Matyastik v. United States, 392 F.2d 657 (5th Cir. 1968); Blalock v. United States, 247 F.2d 615, 619 (4th Cir. 1957). In *Blalock* the Court said:

"The 'clearly erroneous' rule applied in equity appeals has no place here, nor even the 'substantial evidence' rule of the Administrative Procedure Act, 5 U.S.C.A. § 1009. Congress gave the courts no general authority of revision over draft board proceedings, and we have authority to reverse only if there is a denial of basic procedural fairness or if the conclusion of the board is without any basis in fact. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; Goff v. United States, 4 Cir., 135 F.2d 610."

It is within these guidelines, therefore, that the Court must deal with the contentions of defendant.

 There is no doubt that the Local Board had a "basis in fact" for reclassifying defendant from II-S to I-A on January 11, 1967, and in doing so, acted properly under the regulations. 32 C.F. R. § 1625.1 and § 1625.2(b). The receipt of the Form 109 from the University on December 27, 1966, left the Local Board with no other choice. A Form 110 notifying defendant of this classification and his right of personal appearance and appeal was mailed on January 12, 1967 (Exhibit 1–A). There is no contention that defendant was unaware of these rights, and his failure to exercise them forecloses the questioning of that classification at this time. Dunn v. United States, 383 F.2d 357, 358 (1st

Cir. 1967); Glover v. United States, 286 F.2d 84, 88 (8th Cir. 1961). No unusual circumstances exist which would warrant the relaxation of the general rule in this regard.

 The argument of defendant that the previous actions of the Local Board "trapped" defendant into allowing the appeal period to lapse is completely without merit. This argument ignores the fact that the burden is on a registrant to establish to the satisfaction of the Local Board his eligibility for a deferment or exemption. 32 C.F.R. § 1622.1 (c). This is likewise true of defendant's claim that the Form 109 received December 27, 1966, was issued solely because defendant had failed to pay his tuition, which is not a requirement for the II-S classification as provided in 32 C.F.R. § 1622.25a. Even if this was the reason for the issuance of the Form 109 by the University, it was a sufficient "basis in fact" for the Local Board to reclassify the defendant. Regardless of the reason therefor, it was clear that defendant was no longer a student in good standing at the University.

Defendant next argues that, assuming the original classification of I-A on January 11, 1967, was valid, the Local Board acted arbitrarily in not classifying him I-S on receipt of the Form 109 on May 12, 1967. In this regard 32 C.F.R. § 1622.15(b) provides:

"(b) In Class I-S shall be placed any registrant who while satisfactorily pursuing a full-time course of instruction at a college, university, or similar institution of learning and during his academic year at such institution is ordered to report for induction, * * *. A registrant who is placed in Class I-S under the provisions of this paragraph shall be retained in Class I-S(1) until the end of his academic year, or (2) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier."

Defendant contends that under the above section and in accordance with 32 C.F.R.

§ 1625.3(b) the Local Board was required to "reopen and consider anew the classification" of the defendant, thereby, even if the I–S classification was denied, giving defendant a right of appeal.

■ The Local Board, however, was not required to reopen on receipt of the the Form 109 on May 12, 1967. The Form 109 shows on its face that defendant's present enrollment was for the semester ending in May, 1967. It would be ridiculous to require the Local Board to reopen on the basis of the student status of defendant, when it was clear that status would be terminated within a matter of days. Further, it is clear from the file that the Local Board had questioned defendant's student status and sought to obtain additional information. This is shown by the letter (Exhibit 1–K) from the Clerk to the defendant. At no time did defendant attempt to comply with the requests of the Local Board. It is difficult, therefore, to see how defendant can now claim he was prejudiced by the actions of the Local Board. This is especially true in light of the fact that defendant did not continue his studies beyond May, 1967. (See Exhibit E.)

■ In addition, the defendant later withdrew his requests for classification as a student when he submitted the Form 150 (Exhibit 1–O) on June 23, 1967, wherein he stated:

"In a previous letter, I requested a cancellation of my induction so that I could graduate this summer and then go into the Peace Corps. I would like to withdraw that request."

It apparently was the decision of defendant to rely solely on his claim for classification as a conscientious objector. In doing so the defendant rendered harmless any errors in regard to his claim for II–S and I–S status, and he cannot be heard to object at this point.

The next contention of defendant is in regard to the manner in which his claim for conscientious objector status was handled. Defendant relies principally upon the fact that the Local Board never formally met together to consider the Form 150 submitted by defendant on June 23, 1967. On receipt of the Form 150, it was immediately sent to the office of the Iowa State Director of Selective Service for recommendation. This recommendation was transmitted by telephone to the Clerk on June 26, 1967, and she contacted the members of the Local Board by telephone for their decision. Upon receipt of defendant's file back at the Local Board on June 27, 1967, the Clerk contacted the members of the Local Board separately in person and, after reviewing the file, they each initialed the classification memorandum (Exhibit 1–R) prepared the day before. The Clerk testified that this rather unorthodox procedure was followed because all the members of the Local Board were familiar with defendant's file and it was thought to be to defendant's advantage to dispose of the claim before his induction date of June 28, 1967.

■ Under 32 C.F.R. § 1625.2 a registrant's classification "shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." This Court has previously held that the belated development of conscientious objections is not a change in status beyond the control of a registrant. United States v. Davis, 284 F.Supp. 93, 97 (S.D. Iowa 1968), and authorities cited therein. It is clear, therefore, that there was a basis in fact for the denial of reopening on defendant's claim for conscientious objector status. Under the proviso of § 1625.2 no other decision was available to the Local Board. This being the case, the manner in which such decision was arrived at in no way prejudiced the defendant or denied him procedural due process.

■ The defendant has cited United States v. Walsh, 279 F.Supp. 115 (D.

Mass.1968), and relies heavily on the reasoning of that decision. This Court agrees generally with *Walsh*, but the factual differences are so great that it is rendered inapplicable to the present case. When a registrant waits until five days before induction to submit an application for conscientious objector status in an obvious last minute effort to avoid induction, this Court will not overturn the decision of the Local Board because of technical irregularities in the manner in which said application was handled. As was stated by the Court of Appeals for the Fifth Circuit, "Proceedings before local and appeal boards are informal and are stripped of the panoply of formal judicial tribunals." Clay v. United States, 397 F.2d 901 (5th Cir. 1968). The informal manner in which defendant's claim was handled in no way denied him procedural due process, and was undertaken for his benefit.

To allow registrants to make endless last minute claims after receiving an Order to Report for Induction and require strict adherence to the regulations by the local boards in dealing with such claims, would allow registrants to delay induction indefinitely and completely disrupt the orderly operation of the Selective Service System. This is not the intent of the regulations. This is especially true in the present case, where the claim for conscientious objector status borders on the frivolous. The informal manner in which the Local Board disposed of this claim was not arbitrary and capricious, and did not deny defendant any substantive rights under the circumstances.

Therefore, it is clear defendant's motion for acquittal should be and is hereby denied on all the above grounds.

The Court finds the defendant, John Rundle, guilty as charged in Count I of the indictment.

Defendant will remain at liberty on his present bond pending the completion of a presentence investigation, after which defendant will be ordered to appear for sentencing.