**UNITED STATES of America, Plaintiff,**

v.

**Walter Gale THOMAS, Defendant.**

**Crim. A. No. 18049.**

United States District Court
E. D. Illinois.

Sept. 29, 1954.

Clifford M. Raemer, U. S. Atty., Salem, Ill., John Morton Jones, Asst. U. S. Atty., Danville, Ill., for plaintiff.

Ben F. York, St. Louis, Mo., John F. Twomey, Danville, Ill., for defendant.

PLATT, District Judge.

The grand jury returned an indictment against Walter Gale Thomas for violation of Sec. 462, Title 50 U.S.C.A.Appendix. It alleged he refused to comply with the order of his selective service board to perform certain civilian work contributing to the maintenance of national health, safety or interest at the University of Chicago Clinics, Chicago, Illinois. Mr. Thomas waived jury trial as provided by Rule 23(a) of Fed.Rules Crim.Proc. 18 U.S.C.A. He stipulated in writing that the selective service system file be considered in evidence and his refusal to report. He waived any question of venue.

Mr. Thomas now maintains that he should be acquitted for the following reasons:

1. The local board and the appeal board arbitrarily and capriciously denied him a ministerial exemption in the face of the evidence of a prima facie claim to such ministerial exemption.

2. The draft board erred in refusing to decide on the record before it whether the defendant was entitled to a 4–D classification, and the appeal board erred in reviewing the record under these circumstances.

3. The draft board and appeal board erred and acted capriciously, arbitrarily and without a basis of fact in not deciding the issue, as to whether the defendant was entitled to a 4–D ministerial exemption.

4. The order to report for civilian work was not within the time limit prescribed by the regulations since the defendant's physical examination was given more than 19 months before he was ordered to report for civilian work.

5. The order of the local board for the defendant to perform civilian work at a private university, and sections 1660.1 and 1660.20 of the Selective Service Regulations are in conflict with the Act, because the work is not national or federal work, as required by the Universal Military Service and Training Act.

6. The Act, as construed and applied by the Regulations and Order, calls for a private non-federal labor draft for the performance of services that are not "exceptional" or related to the National Defense in violation of the Thirteenth Amendment to the Constitution of the United States.

In order to determine the first four contentions of the defendant the selective service system file must be analyzed. It discloses the following facts: The first questionnaire of August, 1949 returned to the board by Mr. Thomas stated he was born November 4, 1927. He had been a minister of Jehovah's Witnesses since June, 1939, formally ordained, and attended the Theocratic Ministry School of the Watchtower Bible and Tract Society. He received no pay for his ministerial services. As a secondary employment he was a brick mason and cement finisher. He worked five years at this trade, on an average of 40 hours per week, at the rate of $2 per hour. He stated he was conscientiously opposed to war, and had been classified 4–F in the last war. (World War II.) He requested a 4–D ministerial exemption. With the questionnaire Mr. Thomas enclosed affidavits that he was a minister. He also filed an affidavit himself alleging that he devoted, at least, 40 hours per month to the ministerial vocation, and attended the ministry school which was conducted every Friday night at the local meeting place of Jehovah's Witnesses. He worked as a masonry finisher and did some carpentry work to earn a living as his ministerial duties paid no salary. Also enclosed was a printed certificate showing that the defendant was an ordained minister of Jehovah God.

In August, 1949 Mr. Thomas completed his special form for conscientious objector and again stated that he was an ordained minister holding the position of territory servant, and worked for Carl Thomas as a brick mason and cement

finisher from 1944 to 1949. January 18, 1950 Mr. Thomas was classified 3–A, dependency. October 24, 1951 the board classified Mr. Thomas 1–A.

A hearing was had before the board on November 7, 1951 at the request of Mr. Thomas. According to the summary he told the board that he had filed proof he was a minister, preaching from house to house and also conducted meetings. He was in partnership with his father in the building contract business but preached in the evening and on weekends, and regularly served as a minister. The board continued the 1–A classification.

A physical examination was given Mr. Thomas November 9, 1951. In his medical history he stated he had one job for the past three years and his usual occupation was "home cons." He was found acceptable for induction in the armed forces.

The board changed the classification of Mr. Thomas on November 14, 1951, giving him a 1–O, conscientious objector. He appealed this classification claiming the ministerial exemption. With the letter of appeal he enclosed an affidavit signed by four ordained ministers of Jehovah's Witnesses, which stated in part that Mr. Thomas was serving regularly as a part time minister, preaching and teaching the tenets and beliefs of Jehovah's Witnesses. The appeal board on October 3, 1952 classified Mr. Thomas 1–O.

The board mailed Mr. Thomas the special report for class 1–O registrants. He refused to complete the form. He wrote the board October 15, 1952 saying he had been preparing for the ministry for a number of years and served as a part time minister under the direction of the Watchtower Bible and Tract Society. The only assignment that he would accept would be a full time minister.

Mr. Thomas appeared before the local board October 30, 1952 to determine his civilian work assignment. The summary of this meeting stated the registrant was working on important work now, but that his chief employment was being a minister. It further stated he had worked in the spring erecting homes at Rantoul, Illinois, and when this work was completed he hoped to be a full time minister. He refused to accept any employment except preaching, as it would interfere with his ministerial work.

The board notified Mr. Thomas of another hearing for May 28, 1953 in Danville, Illinois. May 6, 1953 Mr. Thomas called from Florida to determine whether it was necessary for him to attend. He stated that he had been constructing homes in Florida for the past six months. He appeared at the meeting, but was unwilling to accept any work approved by the selective service board. The board by letter of June 3, 1953 requested authority from the Director of Selective Service to assign the registrant to the University of Chicago Clinics, Chicago, Illinois, under 1660.20(d) of the Regulations. By letter of June 5, 1953, this was forwarded by the State Director to the National Director of the Selective Service System, Louis B. Hershey, who, on June 18, 1953, approved the assignment of work at the University of Chicago Clinics. The board ordered Mr. Thomas to report for hospital work at the University of Chicago Clinics July 6, 1953 Mr. Thomas did not report.

At the trial the defendant introduced in evidence a "Certificate for Pioneer Appointment," and testified that he received this "Pioneer Appointment" September 1, 1953. He also maintained that the summary of the draft board of November 7, 1952 was incomplete, in that he was denied his right to complete his statement to the board. Considering his testimony the court finds that this summary did contain the material facts as to Mr. Thomas' status for classification.[1]

1. The evidence on classification should be limited to the evidence in the file before the Sel. Sec. Board. Cox v. United States, 332 U.S. 442, 454, 68 S.Ct. 115, 92 L.Ed. 59.

In answer to the first three reasons of the defendant for acquittal it is evident that the board had substantial basis from the facts presented by the file to deny Mr. Thomas his ministerial exemption. He worked 40 hours per week as a brick mason and cement finisher. While he always claimed that he was a minister of Jehovah's Witnesses he never detailed the number of hours that he devoted to preaching, except in the affidavit with the first questionnaire, he asserted that he devoted at least 40 hours per month to the ministry vocation. It is not the duty of this court to reclassify the defendant. This is a matter entirely for the board. In his brief the defendant argues that it was necessary for the board to establish that he was not a minister,[2] but in Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 157, our Supreme Court expressly stated:

"[T]he selective service registrant bears the burden of clearly establishing a right to the exemption."

The defendant's contention that the draft board and appeal board never decided whether the defendant was entitled to a 4–D classification is beside the point. When the draft board in the face of the registrant's request for 4–D classification classified him a conscientious objector, it certainly denied the exemption. Again when Mr. Thomas appealed and the appeal board classified him 1–O he was denied the exemption. There is nothing in the regulation requiring specific denial of a 4–D classification.

The fourth ground presented for acquittal by Mr. Thomas is that since his physical examination was November 9, 1951, and he was ordered to report on July 6, 1953, he should have been given another physical examination before being ordered to report for civilian work. Regulation 1628.10 provides:

"Every registrant, before he is * * * ordered to perform civilian work contributing to the mainte-

nance of the national health * * * shall be given an armed forces physical examination * * *."

No time is mentioned when this physical examination is to be given. Defendant relies on Local Board Memorandum No. 28, issued December 28, 1950. While the District Court for the Northern District of Ohio in United States v. Hardman, No. 20,763 and in United States v. Krzynowek, No. 20,764 (both dated November 10, 1952) held that this was fatal to the induction order; Memorandum No. 28 was not intended to apply to a conscientious objector. Paragraph 16 of this memorandum expressly sets forth:

"Selective service registrants found acceptable for military service normally will be ordered to report to *induction stations* in not less than 21 and not more than 120 days after the preinduction examination."

A conscientious objector is not ordered to report to an induction center, but is found acceptable for civilian work contributing to the maintenance of the national health, safety, or interest. He is assigned to appropriate work, and ordered to report to his draft board where he will be given instructions to proceed to the place of employment (SSS Form No. 153). It is further noted (assuming that the above Ohio cases involved conscientious objectors) that the United States Attorney agreed with the court to the discharge of the defendants, overlooking the inapplicability of Memorandum to conscientious objectors. In Miller v. United States, 6 Cir., 169 F.2d 865 the court made this distinction under a similar regulation.[3] Furthermore on June 19, 1952 Operations Bulletin No. 70 was issued by National Headquarters, Selective Service System, Washington, D. C. This bulletin provides in part:

"8. It is not necessary that Class 1–O registrants be re-examined in the event they are not ordered to report to work within the 120 days

---

2. See United States v. Simmons, 7 Cir., 213 F.2d 901.

3. Also see Peterson v. United States, 6 Cir., 173 F.2d 111 and United States v. Balogh, 2 Cir., 160 F.2d 999.

following completion of their first mental and physical examination. However, the local board may order a Class 1–O registrant for re-examination if more than 120 days have elapsed since he was examined and found acceptable for service and the local board has reason to believe that he may no longer be acceptable."

At the time Mr. Thomas was examined he was classified 1–A but the local board changed this to 1–O on November 14, 1951. Defendant appealed and was again classified 1–O October 3, 1952. Inasmuch as Mr. Thomas never informed the board his physical status had changed, the board had no reason to believe that he was not acceptable for civilian work and was not required to order him re-examined.[4] Therefore, Mr. Thomas is not entitled to acquittal because of no physical re-examination.

The registrant in his fifth and sixth reasons for acquittal maintains that the assignment to work at the University of Chicago Clinics, Chicago, Illinois, was not national work nor for a federal agency, and was in violation of the Thirteenth Amendment. This court has held in United States v. Smith, 124 F.Supp. 406, in this District, that an assignment to a state hospital was within the Act as provided by Sec. 456(j) of the Universal Military Training and Service Act, Title 50 U.S.C.A.Appendix, § 456(j), and that the statute is constitutional.

 The Clinics of the University of Chicago qualify as an institution for civilian work under the terms of the statute and the regulations. Sec. 1660.1 of the Regulations provides in part:

"Definition of Appropriate Civilian Work—

(a) The type of employment which may be considered * * *.

\* \* \* \* \* \*

(2) Employment for a nonprofit organization, association, or corporation which is primarily engaged either in a charitable activity conducted for the benefit of the general public or in carrying out a program for the improvement of the public health or welfare, including educational and scientific activities in support thereof, when such activity or program is not principally for the benefit of the members of such organization, association or corporation, or for increasing the membership thereof."

The evidence is conclusive that the University of Chicago is not only a nonprofit corporation but the facilities of the Clinics are open to all citizens regardless of race, creed, color, or financial ability. It carries on research in cancer, malaria and other diseases. Federal grants are made to the University to aid in the expense of the project. No one can question that the beneficial effects of such research is nationwide. Furthermore, the Selective Service System has chosen the University of Chicago Clinics as a proper place for assignment for conscientious objectors. The Selective Service System is an administrative body and its interpretation of the law and regulations is entitled to weight. United States v. Jackson, 280 U.S. 183, 50 S.Ct. 143, 74 L.Ed. 361; United States v. Citizens Loan Co., 316 U.S. 209, 62 S.Ct. 1026, 86 L.Ed. 1387; National Labor Relations Board v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 691, 692, 71 S.Ct. 943, 95 L.Ed. 1284. Not alone does this court give weight to the decision of this administrative body, but

4. If Mr. Thomas had been ordered to report for armed forces, he would have no defense here. Memorandum No. 28 provides: "2. Action by Local Board.—(a) Except in the cases of postponed registrants, the 120-day period of validity continues in effect for armed forces physical examination. However, when a registrant whose physical examination is more than 120 days old is selected for induction, the local board shall not order him to report for armed forces physical examination but shall order him to report for induction. In each such case the registrant will receive a complete examination at the armed forces examining and induction station and when found acceptable will be immediately inducted."

agrees entirely with its choice of the University of Chicago Clinics as being in every way appropriate civilian work for conscientious objectors.

This court concludes that Mr. Walter Gale Thomas is guilty as charged in the indictment.