UNITED STATES of America

v.

William **MENDOZA**, Defendant.

No. 67–CR–468.

United States District Court
E. D. New York.

Jan. 15, 1969.

Joseph P. Hoey, U. S. Atty. E.D. New York, for United States of America; Michael Rosen, Frank R. Natoli, Asst. U. S. Attys., of counsel.

Koozman & Hartman, New York City, for defendant; George H. Hartman, New York City, of counsel.

ZAVATT, Chief Judge.

This is a criminal prosecution under the Military Selective Service Act of 1967, 50 U.S.C. App. §§ 451–71, tried to the court without a jury pursuant to Rule 23(a) of the Federal Rules of Criminal Procedure. Defendant is charged with knowingly failing and neglecting to perform a duty required of him under that Act, namely, to report for civilian work at Kings Park State Hospital in lieu of induction, in violation of 50 U.S.C. App. §§ 456(j), 462(a). There is no dispute as to whether defendant did in fact knowingly fail and neglect to report to Kings Park State Hospital, and the court finds beyond a reasonable doubt that he did knowingly fail and neglect to so report. However, defendant raises several questions of law in support of his position that his failure to report was not in violation of the aforesaid statutes.

Defendant claims that

(1) no valid order was ever issued by his Local Draft Board directing him to report for civilian work;

(2) he was denied due process of law in that he was not furnished a copy of the report of the Government Appeal Agent, included in his Selective Service file, and was not given an opportunity to reply thereto;

(3) he was denied due process and equal treatment under the Selective Service Regulations because his "processing" for civilian work was not commenced within ten days after he was found physically acceptable, as allegedly required by 32 C.F.R. § 1660.20(a);

(4) he was denied the right to be represented by counsel before the Local Board contrary to the Fifth and Sixth Amendments to the Constitution.

Defendant was duly registered with Selective Service Local Board No. 8, New York, N. Y. He was classified I–A by that Board on April 4, 1962, and again on July 11, 1962 following a personal appearance before the Local Board. He appealed this classification and on October 16, 1963 was classified I–A by the Appeal Board. Subsequently, the Local Board ordered defendant to report for a physical examination, which was conducted on April 17, 1964. On April 24, 1964 a Statement of Acceptability (DD Form 62) was mailed to the registrant indicating that he was physically qualified for duty in the armed forces. He was ordered to report for induction on April 8, 1965. On that date he did so report and passed a physical examination at the induction station. Defendant refused to submit to induction on April 8, 1965.

Following this refusal and on May 14, 1965 the Local Board mailed to the defendant New York City Form No. 54, a questionnaire to be answered by a registrant claiming to be a conscientious objector and/or minister of religion. The defendant typed his answers and returned the said form to his Local Board on or about May 25, 1965. He stated his gainful employment as operator of a circular knitting machine, 35 hours per week, at a weekly compensation of $100; his membership in the East Harlem Unit of the Congregation of Jehovah's Witnesses; that he was appointed a "Publisher" on November 22, 1957 devoting 25–30 hours per month to "field ministry"; that he was not a "Pioneer" [1]

1. "In the structure of the church, the Congregation Servant presides and is in a position comparable to that of the minister in the more conventional denominations. Immediately below him are the

Pioneer Ministers, who are required to devote a minimum of 100 hours a month to religious duties, and the Assistant Congregation Servant, who assumes leadership of the church in the absence of the

(later and on March 31, 1966 the defendant filed a second Form 54 advising the Local Board that he had been appointed a "Vacation Pioneer" for the period September 1 to November 30, 1965); that, during the preceding month, he devoted 15–18 hours to distributing literature. He attached a typewritten sheet listing his Bible studies and stating his opposition to all war, with citations to Books of the Bible. Thereafter, on July 14, 1965, the Local Board reopened his classification and reclassified him I–O. On July 28, 1965, the defendant notified the Local Board that he wished to appeal the I–O classification to the Appeal Board. On August 14, 1965, after the defendant had appeared in person before the Local Board in response to his request of August 2, 1965 for reconsideration of his classification by the Local Board, his I–O classification was continued on the ground that the defendant had failed to furnish any new evidence to warrant a change of his I–O classification. On August 16, 1965 and before the Local Board forwarded the defendant's appeal to the Appeal Board, it referred the defendant to the Government Appeal Agent. On that day the said Agent prepared a written statement for inclusion in the defendant's Selective Service file that was to be sent to the Appeal Board but did not give a copy thereof to the defendant.

The Appeal Agent testified that, while he did not specifically remember this meeting with the defendant, his general practice, when a registrant is referred to him for consultation about his appeal, is first to familiarize himself with the registrant's file and then have the registrant brought in. The Agent then tells the registrant that he will take his statement in the form of "an appeal" to be presented to the Appeal Board. He then asks the registrant to state his reasons for his objection to his present classification. At the conclusion of the interview, the Agent asks the registrant if there is anything he wishes to add. The registrant is advised that he has a right to submit additional information within thirty days and is then excused. After the registrant leaves, the Appeal Agent prepares a handwritten statement from the notes he has taken during the interview. Later, this statement is typed by a local board employee and placed in the registrant's Selective Service file and the entire file is forwarded to the Appeal Board. Both the handwritten and typewritten statements with reference to this defendant's appeal are in the defendant's Selective Service file.

The statement of the Government Appeal Agent recited that the defendant was single; 22 years of age; lived at home with his parents; was employed as a knitter, working a thirty-five hour week with occasional overtime; was now a Jehovah's Witness, having been ordained in 1957; was a "Publisher" in the East Harlem Congregation, located at 175 West 120th Street, and was devoting all of his time, except that spent working as a knitter, in the ministry of the Jehovah's Witnesses. It recited three reasons upon which defendant based his claim for a ministerial exemption (Class IV–D):

(1) that the full-time civilian work he might be called upon to perform in lieu of induction might hinder him from performing his ministerial duties;

(2) that he had a pending application for Pioneer status in his Congregation which, if granted, would require him to devote 100 hours per month to field service and

(3) that he considered his ministerial responsibilities paramount in his life and could not willingly relinquish them.

This statement was consistent with the Form 54 previously filed by the defendant and articulated, in addition, these three specific grounds for the classification he sought.

Congregation Servant. Then come the Bible Study Servants, Magazine Territory Servants, Accounts Servants and various study and school Servants." United States v. Hull, 391 F.2d 257, 258 (4th Cir.), cert. denied, 392 U.S. 914, 88 S.Ct. 2076, 20 L.Ed.2d 1373 (1968).

On August 30, 1965, defendant's file was forwarded to the Appeal Board. On September 22, 1965, that Board voted to retain him in Class I–O. This was the last classification given the defendant who has stipulated that his I–O classification has a basis in fact.

Not until July 8, 1966, was Selective Service System Form 152 mailed to the defendant. This form provides a Class I–O registrant with an opportunity to propose three types of civilian work which he offers to perform in lieu of induction. See 32 C.F.R. § 1660.20(a) [2]

and Local Board Memorandum No. 64,[3] directions from the Director of Selective Service (Director) to all local boards. On July 20, 1966, the said form was returned, uncompleted, by the defendant. On July 26, 1966, pursuant to 32 C.F.R. § 1660.20(b),[4] the Local Board, by letter, offered the defendant three types of civilian work he could perform in lieu of induction. On August 5, 1966 the defendant appeared at the Local Board and refused all three types of work. Accordingly, on November 21, 1966 the Local Board held a meeting pursuant to 32 C.F.R. § 1660.20(c) [5] at which Captain Thomas

2. 32 C.F.R. § 1660.20(a).
   "When a registrant in Class I-O has been found qualified for service in the Armed Forces after his armed forces physical examination or when such a registrant has failed to report for or to submit to armed forces physical examination, he shall, within ten days after a Statement of Acceptability (DD Form 62) has been mailed to him by the local board or within ten days after he has failed to report for or submit to armed forces physical examination, submit to the local board three types of civilian work contributing to the maintenance of the national health, safety, or interest as defined in section 1660.1, which he is qualified to do and which he offers to perform in lieu of induction into the Armed Forces. If the local board deems any one of these types of work to be appropriate, it will order the registrant to perform such work, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I-O, unless he has volunteered for such work."

3. Local Board Memorandum No. 64.
   "A registrant in Class I-O who has not volunteered for civilian work in accordance with paragraph 2 of this memorandum, shall be mailed a Special Report for Class I-O Registrants (SSS Form No. 152) within ten days after a Statement of Acceptability (DD Form 62) has been mailed to him or within ten days after he has failed to report for or submit to armed forces physical examination. Thereafter, the registrant shall be processed in accordance with the pertinent provisions of section 1660.20 of the regulations." Paragraph 4(a).

4. 32 C.F.R. § 1660.20(b).
   "If the registrant fails to submit to the local board types of work which he offers to perform, or if the local board finds that none of the types of work submitted by the registrant is appropriate, the local board shall submit to the registrant by letter three types of civilian work contributing to the maintenance of the national health, safety, or interest as defined in section 1660.1 which it deems appropriate for the registrant to perform in lieu of induction. The registrant, within ten days after such letter is mailed to him by the local board, shall file with the board a statement that he either offers to perform one of the types of work submitted by the board, or that he does not offer to perform any of such types of work. If the registrant offers to perform any one of the three types of work, he shall be ordered by the local board to perform such work in lieu of induction, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I-O, unless he has volunteered for such work."

5. 32 C.F.R. § 1660.20(c).
   "If the local board and the registrant are unable to agree upon a type of civilian work which should be performed by the registrant in lieu of induction, the State Director of Selective Service for the State in which the local board is located, or the representative of such State Director, appointed by him for the purpose, shall meet with the local board and the registrant and offer his assistance in reaching an agreement. The local board shall mail to the registrant a notice of the time and place of this

Maher, a representative of the New York City Director's office, and the defendant were in attendance. The defendant refused to perform any civilian work. The Local Board then recommended that he perform currently available institutional work at King's Park State Hospital and so advised the defendant.

On December 14, 1966 the defendant's file was forwarded through appropriate channels to the Director for his approval of the work recommended by the Local Board. See 32 C.F.R. § 1660.20(d).[6] By letter dated December 30, 1966, the Director approved the civilian work recommended by the Local Board, and on January 3, 1967 the Local Board received notice to that effect from New York City Selective Service Headquarters. The Board did not meet to discuss the defendant's case from November 21, 1966, the date of the meeting attended by Captain Maher, through January 13, 1967. On that date a Selective Service System Form 153, signed by the Clerk of the Local Board, was mailed to the defendant. It ordered the defendant to appear at the Local Board on January 25, 1967 for instructions concerning civilian work to be performed by the defendant at Kings Park State Hospital. The defendant appeared at the Local Board on that date and was so instructed but did not, thereafter, appear at Kings Park State Hospital, whereupon this indictment was returned.

### Order to Report for Civilian Work

The substance of defendant's contention is that the "order" (SSS Form 153),

issued January 13, 1967, was not the order of the Local Board but at most that of its Clerk and, therefore, that he was under no duty to obey it. This is not the first time this point has been raised, although it is novel to this Circuit. In Brede v. United States, 396 F.2d 155 (9th Cir. 1968) (*Brede* I), under circumstances similar to those in the instant case, the local board determined, at a meeting at which a representative of Selective Service was present, that a particular job was available and appropriate for the registrant. When the approval of the Director was obtained, an SSS Form 153 was mailed to the registrant by the board clerk, without specific instructions by the local board to do so. The Ninth Circuit Court of Appeals held that 32 C.F.R. § 1660.20(d) "requires the local board, after receiving * * * authorization [from the Director], to meet and order the [registrant] to report for such civilian work." The court noted that "It is not provided in the Selective Service Regulations that a clerk can order a I–O registrant to report for civilian work without a meeting and the approval of the board members." 396 F.2d at 157. In denying the Government's request for a rehearing, however, the Ninth Circuit modified its opinion. Brede v. United States, 400 F.2d 599 (9th Cir. 1968) (*Brede* II). It held that § 1660.20(d) does not require that a local board meeting be held after receipt of the Director's authorization; that an order to report for civilian work may be made prior to such approval, subject to subsequent approval and subsequent notice to the registrant.

meeting at least 10 days before the date of the meeting. If agreement is reached at this meeting, the registrant shall be ordered by the local board to perform work in lieu of induction in accordance with such agreement, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I-O, unless he has volunteered for such work."

6. 32 C.F.R. § 1660.20(d).
"If, after the meeting referred to in paragraph (c) of this section, the local

board and the registrant are still unable to agree upon a type of civilian work which should be performed by the registrant in lieu of induction, the local board, with the approval of the Director of Selective Service, shall order the registrant to report for civilian work contributing to the maintenance of the national health, safety, or interest as defined in section 1660.1 which it deems appropriate, but such order shall not be issued prior to the time that the registrant would have been ordered to report for induction if he had not been classified in Class I-O, unless he has volunteered for such work."

In its petition for a rehearing, the Government contended that, under prevailing adminstrative construction of and practice under § 1660.20(d), a determination that certain work is appropriate constitutes an implied order to report for such work, subject of course to the appropriate authorization and notice. Under such an interpretation, the action of the clerk could be viewed as merely a ministerial implementation of that "implied order" and the Form 153, therefore, as an order of the local board. *Brede* II held that "in an appropriate case" this position may have merit, but that the record was silent as to administrative construction or practice, or as to any understanding of the board in such respects "from which it might be found that the critical exercise of administrative judgment had been made." 400 F.2d at 600. For this reason, a rehearing was denied and the reversal of appellant's conviction left standing.

In Davis v. United States, 402 F.2d 513 (5th Cir. 1968), it was held that a local board fully complies with § 1660.20(d) when it offers a registrant particular, available civilian work after having determined that he is qualified to perform such work. If that is done, the local board may subsequently notify the registrant to report for civilian service, after it has received authority to do so from the Director pursuant to 32 C.F.R. § 1660.20(d). *Davis* holds that the board need not meet again to consider the registrant's case after the approval arrives from the Director, since the "critical exercise of administrative judgment" has already been made.

Two recent decisions in the Western District of Wisconsin reach an opposite conclusion in virtually identical situations. *Cupit v. United States*, 292 F. Supp. 146 (W.D.Wis.1968); *Hestad v. United States*, 68–C–176, October 29, 1968. Both cases involved motions under 28 U.S.C. § 2255 to set aside convictions under the same statutes now before this court. While that court agreed with *Brede* II that board deliberation and determination need not follow approval by the Director, but may precede it, subject to subsequent notice to the registrant, it held in both instances that an "order" of the local board, as distinguished from that of its clerk, may not be implied from the conduct of the board in recommending particular civilian work to be performed in lieu of induction. *Hestad* and *Cupit* hold that to imply such an order would raise a serious constitutional issue under the Due Process Clause of the Fifth Amendment. Accordingly, to avoid that constitutional issue, the court construed the term "order" to mean:

> "an express and reasonably definite and specific motion or resolution deliberated upon and approved by a majority of the local board, whether unconditionally and after approval by the National Director, or conditionally and prior to such approval, and set forth clearly and understandably in some readily accessible record maintained by the local board." *Cupit v. United States, supra,* 292 F.Supp. at 152.

Under such an interpretation of § 1660.20 (d), no "order" was ever issued by the defendant's Local Board in the instant case. However, this court holds that *Brede* II and *Davis*, rather than *Hestad* and *Cupit*, correctly interpret the board's duties under § 1660.20(d) and that, on the facts of the instant case, a valid order to report for civilian work was issued by the Local Board.

An "order" within the meaning of 32 C.F.R. § 1660.20(d) entails more than the notice given the registrant on Form 153 that he must perform certain duties. It necessarily includes within its scope the exercise of discretion and the determination that a registrant will be required to serve in a particular capacity at a particular place of employment. Testimony was elicited at the trial with respect to the administrative interpretation of this regulation. The Local Board members operate under the assumption that they can direct a registrant to do civilian work, at the meeting held with the registrant in the presence of the representa-

tive of the Director (see § 1660.20(c)), with the understanding that its direction must be approved subsequently by National Headquarters. This interpretation is reinforced by the testimony of Captain Maher, the Chief of the Legal Division of New York City Selective Service Headquarters. He testified that he reviews with each board, immediately prior to the meeting with a I–O registrant under § 1660.20(c), the requirements of § 1660.-20, but that he does not advise the board that it must meet again, after the arrival of the Director's approval for the purpose of directing the clerk to issue the "order" (Form 153).

■ It is reasonable to conclude that, as long as the board does exercise its judgment, it may do so prior to the approval of the Director, as long as the registrant is given notice of this decision of the Local Board after the Director has assented. On the facts of this case, it is apparent that the "critical exercise of administrative judgment" was made by defendant's Local Board on November 21, 1966; that the mailing of the Form 153 served only as notice to the registrant of that decision, and that such notice was sent after the approval of the Director had been obtained. The clerk's duties on January 13, 1967 were merely ministerial and were not of a nature that would require another board meeting to consider the defendant's case.

### Appeal Agent

■ Defendant claims that the Appeal Agent's failure to provide him with a copy of said Agent's statement and to give him an opportunity to reply thereto deprived him of due process of law. The government replies that, since it has been stipulated that the defendant's I–O classification by his Appeal Board had a basis in fact, the court is precluded from considering this argument. The court does not agree that it so precluded. A violation of the registrant's procedural rights is not cured by the presence of a basis in fact for his classification. Miller v. United States, 388 F.2d 973, 977 (9th Cir. 1967). The court thus reaches the

merits of the defendant's argument and holds that the defendant has suffered no deprivation of due process of law.

Defendant argues that Application of Kanas, 385 F.2d 506 (2d Cir. 1967), controls the case at bar. In *Kanas*, a habeas corpus petition by an inductee seeking his release from the armed forces, the Government Appeal Agent had taken an appeal from the petitioner's I–A classification on behalf but without the knowledge of the petitioner. The Appeal Board, in continuing petitioner in Class I–A, emphasized a "concession" made in the Agent's handwritten "appeal" to the effect that Cantors in the Jewish religion, such as petitioner, were not at that time within the IV–D ministerial exemption which petitioner was seeking. The district court denied the petition and the Court of Appeals reversed on the ground that there was no basis in fact for petitioner's I–A classification. In *dicta*, the Court of Appeals considered petitioner's argument that, under the circumstances of that case (in which the Appeal Board emphasized the "concession" made by the Government Appeal Agent) the Appeal Agent's filing of a handwritten appeal making such a concession without consulting the petitioner deprived petitioner of due process of law. That court stated that:

> "[W]hether an appeal agent is protecting the interests of the Government or the rights of the registrant, it is essential that the registrant receive a copy of the memoranda submitted to the appeal board by the appeal agent and be given sufficient time in which to reply. In such a case, the registrant should be in no worse position than if he had taken his own appeal; in the latter event, he has the right to file a statement on his own behalf before the appeal board. 32 C.F.R. § 1626.12. '[T]he right to file a statement before the Appeal Board includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and arguments to be countered.' Gonzales v. United States, 348 U.S.

407, 415, 75 S.Ct. 409, 414, 99 L.Ed. 467 (1955)." 385 F.2d at 511.

■ *Kanas* is distinguishable from the case at bar on several grounds. Unlike *Kanas*, where the Government Appeal Agent filed a statement without consulting the registrant, the defendant in the instant case knew that the Government Appeal Agent was preparing a statement to be submitted to the Appeal Board. While defendant did not see the statement when it was placed in his file on August 16, 1965, he had both the right and the opportunity to inspect his file at the Local Board as late as August 30, 1965, the date when his file was sent to the Appeal Board, and to inspect it at the Appeal Board until said Board rendered its decision on September 22, 1965. 32 C.F.R. §§ 1606.32(a) (1), 1606.38.[7] Had defendant chosen to inspect his file, he would have had ample time to reply to the statement of the Appeal Agent during the five week interval between the filing of the statement and the Appeal Board's decision. While 32 C.F.R. § 1626.12,[8] if construed literally, would appear to preclude the filing of a statement by a registrant after he has filed his notice of appeal, that regulation has been construed to permit the filing of a statement even after a registrant's file has been sent to the Appeal Board. United States v. Corliss, 173 F.Supp. 677, 681–682 (S.D.N.Y.1959), aff'd, 280 F.2d 808 (2d Cir.), cert. denied 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960). Cf. Gonzales v. United States, supra, 348 U.S. at 415 n.6, 75 S.Ct. at 413 n.6.

■ *Kanas* is distinguishable on a second ground. In *Kanas*, the Appeal Agent's statement to the Appeal Board contained a prejudicial "concession." In this connection, it is instructive to discuss Gonzales v. United States, supra, relied on by the court in *Kanas*. In *Gonzales*, where the Supreme Court held that a registrant claiming Conscientious Objector status was entitled to receive a copy of the Justice Department recommendation sent to his appeal board and to be given a reasonable opportunity to reply thereto, the Justice Department report in that case recommended denial of the registrant's Conscientious Objector claim. Unlike *Kanas* and *Gonzales*, there was nothing in the statement filed by the Government Appeal Agent in the instant case which could be deemed prejudicial to the defendant's claim for a ministerial exemption. Since the Appeal Agent's statement contained nothing prejudicial to defendant's claim for a ministerial exemption, the court cannot say that failure to provide him with a copy of that statement deprived him of due process of law.

---

7. 32 C.F.R. § 1606.32(a) (1).
   "(a) Information contained in records in a registrant's file may be disclosed or furnished to, or examined by, the following persons, namely:
   (1) The registrant, or any person having written authority dated and signed by the registrant: *Provided*, That, whenever the time of the expiration of such authority is not specified therein, no information shall be disclosed, furnished, or examined under that authority after the expiration of a period of one year from its date."
   32 C.F.R. § 1606.38.
   "When used in this part, the following words with regard to the records of, or information as to, any registrant shall have the meaning ascribed to them as follows:
   (a) 'Disclose' shall mean a verbal or written statement concerning any such record or information.
   (b) 'Furnish' shall mean providing in substance or verbatim a copy of any such record or information.
   (c) 'Examine' shall mean a visual inspection and examination of any such record or information at the office of the local board or appeal board as the case may be."

8. 32 C.F.R. § 1626.12.
   "The person appealing may attach to his appeal a statement specifying the matters in which he believes the local board erred, may direct attention to any information in the registrant's file which he believes the local board has failed to consider or to give sufficient weight, and may set out in full any information which was offered to the local board and which the local board failed or refused to include in the registrant's file."

See United States v. Corliss, 280 F.2d 808, 817 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960); United States v. Oller, 107 F.Supp. 54, 55 (D.Conn.1952), rev'd on other grounds sub nom. United States v. Pekarski, 207 F.2d 930 (2d Cir. 1953).

### Physical Examination

Congress has provided for the physical examination of registrants before they are inducted into the armed forces.

"[E]ach registrant shall be immediately liable for classification and examination, and shall, as soon as practicable following his registration, be so classified and examined, both physically and mentally, in order to determine his *availability for induction for training and service in the Armed Forces* * * *.

"No person shall be *inducted into the Armed Forces* for training and service * * * until his acceptability in all respects, including his physical and mental fitness, has been satisfactorily determined * * *." 50 U.S.C. App. § 454(a). (Emphasis supplied.)

Those registrants who are conscientiously opposed to combatant training and service (I–A–O classification) are inducted into the armed forces and assigned to noncombatant service. 50 U.S.C. App. § 456(j). See also 32 C.F.R. §§ 1622.11, 1631.7. In contrast, registrants who are conscientiously opposed to both combatant and noncombatant service (I–O classification) are not inducted into the armed forces but are ordered by their local boards "in lieu of such induction * * * to perform * * * civilian work contributing to the maintenance of the national health, safety, or interest * * *." 50 U.S.C. App. § 456(j). See also 32 C.F.R. §§ 1622.14, 1660.20. It has been argued, therefore, that Congress has not required that registrants classified I–O be physically examined prior to their being compelled to perform civilian work. See United States v. Walsh, 279 F.Supp. 115, 119 n.9 (D.Mass.1968).

The Selective Service Regulations, promulgated by the President, do provide, however, for the physical examination of I–O registrants.

"Every registrant, before he is ordered to report for induction, or ordered to report for civilian work contributing to the maintenance of the national health, safety, or interest, shall be given an armed forces physical examination under the provisions of this part * * *." * * *" 32 C.F.R. § 1628.10. See also 32 C.F.R. § 1628.11(b).

The regulatory scheme, apparently, is designed to guarantee that the conscientious objector need not serve in a non-military capacity if he would not have been called to serve in the armed forces. See United States v. Lybrand, 279 F. Supp. 74 (E.D.N.Y.1967). Section 1660.-20(a) specifically precludes an order to report for civilian work unless the registrant "has been found *qualified for service in the Armed Forces* after his armed forces physical examination * * *." * * *" (Emphasis supplied.)

Defendant contends that he was not under a duty to report for civilian work because his Local Board commenced his "processing" under 32 C.F.R. § 1660.20 (a) more than ten days after he was found physically qualified, and that this deprived him of "due process and equal treatment." See footnote 2. This argument is premised on the fact that registrants classified I–A and I–A–O are physically examined immediately prior to induction whereas those classified I–O are not. The former are given either a second complete physical examination, or a more cursory physical inspection at the induction station, see Army Regulation 601–270, ch. 3, § III, paras. 67–69 (1965) and Briggs v. United States, 397 F.2d 370 (9th Cir. 1968), while the latter are given only the preinduction physical pursuant to 32 C.F.R. § 1628.10. Defendant stresses that since the fundamental assumption behind the conscientious objector regulations is equivalent liability for service, see United States v. Lybrand, supra, in order to insure that a I–O conscientious

objector is not called upon to perform civilian work if, due to a physical disability, he would not have been drafted, the Regulations require prompt processing (within ten days) following a determination of physical acceptability; and this, according to the defendant, is required since the I–O registrant is not given another physical examination prior to service.

■ The applicable regulation, 32 C.F.R. § 1660.20(a), requires the registrant to submit to his local board, within ten days after a Statement of Acceptability (DD Form 62) is mailed to him, three types of civilian work which he offers to perform. It does not require a local board to take action within any specified time. The regulation tells the registrant what he must do in order to avail himself of the privilege of civilian service. See United States v. Manns, 232 F.2d 709 (7th Cir. 1956). However, Local Board Memorandum No. 64, in mandatory language, does require the local board to mail a Special Report for Class I–O Registrants (SSS Form 152) to all I–O registrants within ten days after a Statement of Acceptability has been mailed to them. Without deciding whether or not the violation of such a ruling from the Director should invalidate a subsequent order of a local board, it is apparent that this provision of Local Board Memorandum No. 64 is not applicable to the facts of the instant case. When the defendant was ordered to be examined, he had been classified I–A. His first physical examination was conducted pursuant to 32 C.F.R. § 1628.10, which is applicable to all registrants. See also 32 C.F.R. § 1628.11(b). Defendant was subsequently examined on April 8, 1965, the date on which he refused induction as a I–A registrant into the armed forces. It was not until the defendant's classification was changed to I–O, that § 1660.20(a) became relevant. However, if the Local Board Memorandum is interpreted as the defendant urges, the Local Board could not have complied with its terms unless a new physical examination were held pursuant to § 1628.10, since only then

would a second DD Form 62 be mailed to the defendant. It would seem fruitless to require the Board to order a reexamination of a registrant newly classified as I–O if he has already been given the appropriate physical examination. The regulation appears to be directed primarily at the registrant's obligations, see United States v. Manns, supra, and if such a reexamination were contemplated by the President, it could have been provided for with greater clarity.

■ Even if the regulations do not require that a local board commence processing conscientious objectors under § 1660.20(a) within a specific time, the question still remains whether the absence of such a requirement and the failure of the Local Board to give defendant a physical examination closer in time to the date on which he was ordered to report for civilian work deprived him of due process of law. The Fifth Amendment contains no equal protection clause. Only where discriminatory legislation is so arbitrary that it violates basic fairness does it offend due process. Schneider v. Rusk, 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L. Ed. 884 (1954); Detroit Bank v. United States, 317 U.S. 329, 63 S.Ct. 297, 87 L. Ed. 304 (1943). The regulations concerned with the processing of conscientious objectors are not arbitrary but, rather, rational. It should be noted that as far as Selective Service Regulations are concerned, I–A, I–A–O and I–O registrants are afforded the same rights to physical examinations. Section 1628.-10 provides that all such registrants be examined prior to induction or the performance of civilian work in lieu of induction. It is the Army that chooses to require I–A and I–A–O registrants, at the induction station, to undergo further examination. See AR 601–270, supra, which provides that a physical inspection be completed of any prospective inductee who has had a preinduction physical within one year of the induction date, and that a full scale examination be made of all other prospective inductees.

There is no similar provision in the Selective Service Regulations. Several courts have held that Army Regulations similar to AR 601-270 are not applicable to I-O registrants. Johnson v. United States, 285 F.2d 700 (9th Cir. 1960); Miller v. United States, 169 F.2d 865 (6th Cir. 1948); United State v. Thomas, 124 F.Supp. 411 (E.D.Ill.1954), aff'd sub nom. United States v. Hoepker, 223 F.2d 921 (7th Cir.), cert. denied, 350 U.S. 841, 76 S.Ct. 81, 100 L.Ed. 799 (1955).

█ It is logical for the military authorities to insure that a potential soldier is physically qualified to undergo the rigors of military training and service. They would be remiss if they merely accepted a registrant's silence as to possibly debilitating physical infirmities, which may have arisen since his preinduction physical, as indicating a clean bill of health at the time of induction. The safety of other military personnel might well depend on the sound physical condition of each inductee. The arduous training given to those inducted into the armed forces reasonably requires that the Army obtain the most current knowledge of each soldier's physical abilities and limitations. Furthermore, the Government might well choose to minimize the risk of future liability for a service-connected disability. See, e. g., 38 U.S.C. §§ 310, 331. On the other hand, once a I-O registrant is found physically qualified for training and service in the armed forces, the Selective Service System has accomplished its objective of equivalent obligations. If the registrant is found not to be qualified for service in the armed forces he will be rejected for all service, including civilian service. It is reasonable, however, for the civilian agency not to require as current a physical examination as does the Army. A conscientious objector will serve in a substantially less physically demanding capacity than a soldier, and none of the factors which encourage the Army to require current examinations are applicable to a I-O registrant. In fact, under the Selective Service Regulations, if a I-O registrant does not report for his scheduled physical examination as ordered, he is not declared delinquent as are the I-A's and I-A-O's, see 32 C.F.R. § 1642.4(a). Rather, his processing as a I-O is commenced as if he had been found acceptable after an examination. 32 C.F.R. § 1660.20(a). See United States v. Walsh, supra. Obviously the physical examination is not designed to test the qualifications of a I-O registrant to perform civilian work, but is intended only for his own benefit. There is nothing in the record to indicate that the defendant notified his Local Board of a change in his physical condition. See 32 C.F.R. § 1625.1(b). In fact, no such claim was made down to and including the filing of the indictment or at the trial. Cf. Johnson v. United States, supra. There is no reason to believe that the defendant is being called upon to perform alternative service under conditions which would have relieved him of the obligation to perform military service had he not been a conscientious objector. The regulatory scheme does not offend due process.

### Right to Counsel

█ The Regulations provide that "no registrant may be represented before the local board by anyone acting as attorney or legal counsel." 32 C.F.R. § 1624.1(b). Defendant was not afforded the right to have counsel appear with him during any of his appearances before his Local Board and claims a denial of his Fifth and Sixth Amendment rights thereby. It has been held uniformly, however, that no such right exists. Merritt v. United States, 401 F.2d 768 (5th Cir. 1968); United States v. Sturgis, 342 F.2d 328 (3d Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 164, 15 L.Ed.2d 120 (1965); Niznik v. United States, 173 F.2d 328 (6th Cir.), cert. denied, 337 U.S. 925, 69 S.Ct. 1169, 93 L.Ed. 1733 (1949); United States v. Richmond, 274 F.Supp. 43 (C.D.Cal. 1967); United States v. Dyer, 272 F.Supp. 965 (N.D.W.Va.1967). The Second Circuit recently indicated its agreement with this line of authority in support of its determination of another question. See Madera v. Board of Education of City

of New York, 386 F.2d 778 (2d Cir. 1967), cert. denied, 390 U.S. 1028, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968).

The court finds the defendant guilty as charged in the indictment. This opinion constitutes the court's findings of fact and conclusions of law. The attorney for the defendant and the Assistant United States Attorney who tried this case on behalf of the Government are directed to confer with the court immediately upon receipt of a copy of this opinion to arrange a date for the appearance of the defendant before the court.