**UNITED STATES of America**

v.

**Manuel FLORES, Defendant.**

**No. 72 Crim. 453.**

United States District Court,
S. D. New York.

Oct. 27, 1972.

Whitney North Seymour, Jr., U.S. Atty., S.D.N.Y. by George E. Wilson, Asst. U.S. Atty., for the Government.

Kunstler, Kunstler & Hyman, by Steven J. Hyman, New York City, for defendant.

## FINDINGS AND CONCLUSIONS

BRIEANT, District Judge.

By indictment filed April 17, 1972, defendant Manuel Flores was charged, on or about November 9, 1970, and up to and including the date of filing of the indictment in this District, with knowing failure, neglect and refusal to perform a duty required of him under and in execution of the Military Selective Service Act of 1967, 50 U.S.C.App. § 451 et seq. Specifically, defendant was charged that he, being a resident who had been duly ordered by his Selective Service System Local Board to report to the Local Board for instructions to proceed to Kings Park State Hospital, Kings Park, New York, to report for employment as alternate service, had refused and failed to do so.

Defendant pleaded not guilty and waived trial by jury. The cause was tried before me on September 25, 1972. Decision was reserved, and post-trial briefs have been received and considered, together with the transcript and the evidence.

The statute which defendant is charged with violating is § 462(a) of the Military Selective Service Act of 1967 ("Act"). Section 456(j) of the Act contains provisions with respect to conscientious objectors. In substance, this section provides that the Local Board shall, in lieu of induction of a conscientious objector, order civilian, non-combatant service for 24 consecutive months. The section contemplates civilian work contributing to the maintenance of the national health, safety or interests, and provides that any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed in violation of § 462(a). See also 32 C.F.R. § 1660.30.

I find that defendant was a registrant of Local Board No. 2 in the City and County of New York, under the Act, and was born August 28, 1945. He registered with the Board on October 1, 1963.

On May 21, 1965, his Local Board classified him 1–A. He apparently reported for a pre-induction physical on September 2, 1965, and was rejected. On September 14, 1965 he was classified 1–Y. Thereafter he was classified on February 14, 1967 as 1–A, and on March 6, 1967, requested Form 150 to claim classification as a conscientious objector to all wars.

That Form was returned to the Local Board by registrant on March 17, 1967. Thereafter, after proceedings not relevant here, defendant attained a classification of 1–O (conscientious objector) on February 6, 1968. On that same date he signed a statement agreeing to accept civilian employment. On October 28, 1970, Local Board No. 2 mailed an order to defendant to report for instructions on November 9, 1970 to proceed to his alternate civilian employment (at Kings Park State Hospital) in lieu of induction.

Between February 6, 1968 when defendant was classified 1–O and November 9, 1970, defendant conducted himself in a manner which indicates a wilful and knowing intention to disregard his obligations under the Selective Service law and to avoid giving the civilian service, which, as a conscientious objector, he was required to render.

\* \* \* [Factual discussion omitted]

The principal issue raised by the defense is that at the time Mr. Flores was directed to report for civilian work, he was not given an additional physical examination to determine his capability, either to serve in the Armed Forces or to perform civilian work. He had received such a physical examination on two occasions, namely September 2, 1965 and January 16, 1967. On the first occasion he was classified 1–Y. The sole reason for such classification was his failure, on a written test known as AFQT, to meet the mental, or "trainability" standards in effect at that time.

Such limited mentality ceased to become a basis for a deferment (1–Y) based on medical reasons, effective December 1, 1966, when the regulations and standards were changed so as to provide that a person scoring 16 or less, as did defendant, submit to additional tests to confirm his mental level, and determine whether, on an overall physical and mental "profile", registrant could serve. In effect, as the witness Spiegelman observed at the trial, "they lowered the standards" (tr. p. 30).

On January 16, 1967, defendant was re-examined and found fully acceptable for induction into the Armed Forces.

Under Army qualification battery tests then in effect, a person having a low AFQT score could balance out that low result and attain total eligibility if he had high individual scores on other physical and psychiatric categories. We are told that this physical profile, used to supplement the determination of the AFQT score, had been invoked because "a lot of people were faking on the AFQT" (tr. p. 34). This is speculative; whether it was for that reason or because a strong healthy person of limited intelligence may well become an effective soldier, in view of his total profile, while a mentally deficient person who is also physically deficient may be of no value to the military, need not at the present time be considered. Out of seven areas in the Army qualification battery scoring work, this registrant received scores of 101 (very high) in two areas. In 1967, with the revised standards, all registrants who had failed the AFQT were re-examined and were reclassified from 1–Y to 1–A so long as they met the standards of the Army qualifying battery tests. The AFQT minimum requirement at this time for trainability is at 10, a lower level of mental capacity than 16.

■■ Defendant asserts that he was examined and found fit for duty in January, 1967, but not ordered to render civilian service in lieu of induction until October 28, 1970, and that it was not reasonable, and a denial of due process, to order him to report at that time without having had a pre-induction physical more recently than 1967.

At no time did defendant assert to his Local Board that his physical condition had deteriorated in any way since the last examination. Reliance is placed on Army Regulation 601–270, which deals only with physicals at the time of induction, and is not applicable to civilian work. Johnson v. United States, 285 F. 2d 700 (9th Cir. 1960); Miller v. United States, 169 F.2d 865 (6th Cir. 1948); United States v. Thomas, D.C., 124 F. Supp. 411, aff'd. 223 F.2d 921 (7th Cir.), cert. den. sub nom. United States v. Hoepker, 350 U.S. 841, 76 S.Ct. 81, 100 L.Ed. 799 (1955); United States v. Mendoza, 295 F.Supp. 673 (E.D.N.Y. 1969).

LBM 64, issued by the Selective Service System as an administrative direction to Local Boards, does not require re-examination prior to ordering a registrant such as defendant, previously found qualified, to report for civilian work, unless "evidence of a change in physical, mental or moral status is submitted, and the local board has reason to believe he may no longer be qualified." No such evidence existed or was submitted in this case.

The Court finds defendant Guilty as charged. The foregoing constitutes findings pursuant to Rule 23(c), F.R. Crim.P.