**UNITED STATES of America,**
**Plaintiff,**

v.

**Allan Michael WALSH, Defendant.**

**Crim. A. No. 67–45–J.**

United States District Court
D. Massachusetts.

Jan. 26, 1968.

Paul F. Markham, U. S. Atty., Edward F. Harrington, Asst. U. S. Atty., for plaintiff.

William J. Carr, Boston, Mass., for defendant.

## OPINION

JULIAN, District Judge.

The defendant, Allan Michael Walsh, is charged in a two-count indictment with having violated the Universal Military Training and Service Act, 50 App.U.S.C. § 462. The first count charges that he willfully failed and refused on June 16, 1966, to comply with an order of his local draft board to submit to an armed forces preinduction physical examination. The second count charges that he willfully failed and refused on January 20, 1967, to submit as ordered to induction into the armed forces. The case was tried to the Court sitting without a jury.

The defendant is twenty-three years of age and was, at all times relevant hereto, subject to the jurisdiction of Selective Service Local Board No. 122, located in Quincy, Massachusetts.

On October 21, 1964, the defendant returned to the local board a completed Classification Questionnaire [1] on which he claimed conscientious objector status and on which he requested that a special form for that purpose be mailed to him. Such a form [2] was mailed and was returned completed by the defendant to the local board on November 9, 1964.[3]

On the special form defendant signed that section indicating his objection to combatant service in the armed forces. He did *not* claim an exemption from *both* combatant and noncombatant service. The defendant also wrote:

"By reason of religious beliefs, I wish not to be subject to physical examination or medication of any sort."

Defendant based this claim for conscientious objector status on his professed three and one-half years' attendance at services and lectures of the Christian Science Church and on his reading and studying of Christian Science doctrine during that period.

Defendant was not admitted to formal membership in the Mother Church of the First Church of Christ, Scientist, in Boston until the day before he signed this request for exemption. He had, however, attended services during the two years preceding that date.

Christian Scientists as a group do not seek exemptions from combatant (or from noncombatant) military service on the basis of their religious beliefs. In such matters the Church leaves the decision whether or not to seek such exemption to the individual member's conscience.

Opposition on religious grounds to preinduction physical examinations is not required of its members by the Christian Science Church. Christian Scientists regularly serve in the armed forces and, while so serving, submit to medical, surgical, dental and psychiatric procedures when ordered to do so.[4]

The defendant was well aware that this was the policy of the Church. His objection to submitting to a preinduction physical examination was instead allegedly based on his individual religious beliefs.

On March 16, 1965, the five-member local board voted unanimously to classify the defendant I-A (available for military service), and a Notice of Classification [5] was mailed to him three days later. Thereafter, by a letter dated March 27, 1965, the defendant requested a personal appearance before the local board. That request was granted.

---

1. Selective Service System Form No. 100.

2. Selective Service System Form No. 150.

3. On the same date the defendant also returned to the local board a completed Dependency Questionnaire (Selective Service System Form No. 118).

4. See Exhibit 21A, a pamphlet, INFORMATION FOR CHRISTIAN SCIENTISTS SERVING IN THE ARMED FORCES, published by the First Church of Christ, Scientist, at page 16.

5. Selective Service Form No. 110.

Before the scheduled date for appearance, however, the defendant again notified the local board, by a letter received May 20, 1965, that he refused

"to submit to any sort of physical examination in connection with military obligations due to religious beliefs."

In view of this letter as well as the defendant's impending personal appearance, the local board clerk on June 14, 1965, forwarded the defendant's entire Selective Service file to the office of the State Director, seeking "advice and recommendation."

The State Headquarters responded on June 25, 1965, with a letter advising that decision on the defendant's eligibility for either I-O or III-A classifications should be reserved until after his personal appearance. The letter continued:

"We also noticed that Mr. Walsh in a letter dated May 20, 1965, indicated he would refuse to submit to an armed forces physical examination due to his religious belief. There are no provisions in our regulations whereby a man may waive his armed forces physical examination. However, if the registrant is classified in Class I-O and fails to report for armed forces physical examination as ordered, he will not be delinquent but would be considered available for assignment to appropriate civilian work. He must, however, be ordered to report for examination as are all other Class I-A or I-A-O registrants."

The defendant subsequently appeared at a board meeting on February 8, 1966, after which appearance the board voted unanimously to continue his I-A classification. Appropriate notice of that ac-

tion was mailed to him on February 18, 1966.

Upon receiving this notice the defendant responded by another letter, dated March 2, 1966, in which he requested an appeal of his I-A classification. The letter stated that, after the February 8 appearance before the local board, he had been advised during a conference with Major Remo Gandin at State Selective Service Headquarters that registrants classified I-A-O, but not those classified I-O, would be "exempt" from compulsory physical examination. The letter further stated that this information conflicted with that given to him by members of the local board at the February 8th appearance.[6] The defendant's letter continued:

"Feeling that the local Board may have misinterpreted this letter [apparently the letter from State Headquarters of June 25, 1965] I feel that perhaps they were perhaps [sic] unable to come to an accurate appraisal and that this situation should be rechecked."

The Board interpreted this letter as a request for an appeal and granted the appeal despite the expiration of the ten-day appeal period.

Thereafter, on April 1, 1966, the State Appeal Board classified the defendant I-A-O (eligible for noncombatant military service), which corresponded to the status the defendant had claimed on his special form for conscientious objectors. Appropriate notice to this effect was mailed to the defendant on April 25, 1966.

■ It is not disputed, and this Court finds, that both classes of conscientious objectors—not only those who claim I-A-O status [7] but also those who claim I-O status [8]—are required under

---

6. The local board chairman testified that the defendant, although he expressed his unwillingness to submit to a physical examination, did not inquire about and was not advised about the differing results which would stem from disobedience by I-O and I-A-O registrants of orders to submit to physicals.

7. Eligible for noncombatant military work in the armed forces.

8. Exempt from all military duty, both combatant and noncombatant, but subject to assignment to civilian work in the national interest.

Selective Service procedures to be ordered by local draft boards to submit to physical examinations. 32 C.F.R. § 1628.10. However, those conscientious objectors who are classified I-O and who nevertheless fail to report as ordered for a physical examination are *not* declared delinquent but, rather, are deemed to have met that requirement. On the other hand, registrants classified I-A-O who refuse to submit to physical examinations *are* declared delinquent and thus become, like the defendant here, liable to criminal prosecution.[9]

Thereafter, by a notice mailed May 24, 1966, the defendant was ordered by the local board to report for an armed forces physical examination on June 16, 1966. He reported on that date as directed and was taken to the Armed Forces Examination Center at the Boston Army Base. At that point, however, although he took a written examination, he refused to submit to any physical examination, stating that his refusal was based on his religious beliefs.

The local board consequently declared the defendant delinquent on July 12, 1966, and mailed notice to that effect[10] to him.

The defendant responded to this notice by a letter (Exh. 20) received at the local board on July 18, 1966, in which he asked that his classification be reopened and that he be granted a full restoration of his rights to appear personally and to appeal. The letter stated, in part:

" * * * My asking for and accepting [a I-A-O] classification was based on my ignorance and confusion of the IAO and IO classification. I now know that a person with a IO can go into alternative service without taking a physical and can do non-medical work whereas the IAO is required to take a physical examination and usually is trained as a medic. When I asked for and accepted the IAO, I thought that he too did not have to take the Physical exam and could do non-medical work in the army."[11]

Upon receiving this letter the clerk of the local board placed the letter in the defendant's file and then telephoned the board chairman at his business office and related to him the contents of the letter.

Upon learning of defendant's letter from the clerk, the chairman thereupon telephoned two of the other three board members[12] and discussed with them separately the defendant's request. As a result of these conversations he decided that no action should be taken and so advised the clerk by telephone.

No effort was made to contact the fourth board member.[13] No meeting of the board was ever held to discuss or consider the defendant's request. And no letter advising the defendant of any board action on his request was sent to

9. This was the substance of the testimony of now Colonel Remo Gandin, Manpower Officer associated with the Massachusetts Selective Service Headquarters. See also the implied difference in requirements set forth at the bottom of Selective Service System Form No. 223 (Order to Report for Physical Examination).

The distinction flows logically from the applicability of 50 App.U.S.C. § 454(a) to I-A-O, but not to I-O registrants. This section requires that no person be inducted into the armed forces until "his acceptability in all respects, including his physical and mental fitness, has been satisfactorily determined under standards prescribed by the Secretary of Defense."

10. Selective Service System Form No. 304.

11. The defendant had visited State Selective Service Headquarters on two occasions prior to his June 16, 1964, refusal to undergo a physical. On both occasions he discussed with Colonel Remo Gandin the physical examination requirements of both conscientious objector classifications. During these conversations Colonel Gandin, whose testimony this Court believes, advised the defendant that registrants classified I-A-O *were* required to submit to physical examinations whereas I-O registrants were not so required.

12. The board, at that time, had one vacancy.

13. At trial the local board chairman testified that he had thought it sufficient to contact a mere quorum. There was no evidence suggesting that the fourth board member was unavailable.

him as required by Title 32 C.F.R. § 1625.4. Nor was a second Special Form for Conscientious Objectors mailed to the defendant, as he had requested in his letter.

The board chairman testified and this Court finds that he had not until then known of the defendant's alleged confusion concerning the physical examination requirements of the two classifications and that he did not until long afterwards know that I-O registrants were not required to take physical examinations.

Finally, on January 9, 1967, the local board ordered the defendant to report on January 20, 1967, for induction into the armed services. Although he appeared on the appointed date at the induction center, the defendant again refused to submit to a physical examination, relying on his alleged religious beliefs. He was not, therefore, eligible for induction in the opinion of the officer in charge, and for that reason the defendant was not asked to "step forward" and be inducted. This indictment and prosecution followed, the second count being based on the theory that by refusing to submit to a physical examination which was a prerequisite to induction, the defendant had thereby, in effect, knowingly refused to submit to induction into the armed forces.

■ The defendant was under a legal obligation imposed by the Act and the regulations thereunder to comply with all valid orders of his local board. Because he had been classified I-A-O, rather than I-O, this obligation included the duty to submit to a physical examination as ordered by the local board. This he intentionally refused to do.

■ The local board therefore was justified in declaring the defendant delinquent upon his refusal to submit to induction.

■ The defendant, however, after being declared delinquent, sought to have the board reopen and reconsider his classification. Contrary to the Government's contention, this course remained available to him despite his delinquent status.[14]

■ If a registrant seeking to have his case reopened submits new facts not previously presented which make out a *prima facie* case for a different classification, the local board is *required* by law to reopen the case. See United States ex rel. Berman v. Craig, 1953, 3 Cir., 207 F. 2d 888; United States v. Vincelli, 1954, 2 Cir., 215 F.2d 210, 212, rehearing denied, 216 F.2d 681; United States v. Ransom, 1955, 7 Cir., 223 F.2d 15; United States v. Burlich, 1966, S.D.N.Y., 257 F.Supp. 906, 910–911.

■ From that point forward [15] the registrant has a right to appeal from an adverse decision by the board. 32 C.F.R. § 1625.13. Arbitrary or capricious action by a local board in considering such requests invalidates the board's subsequent orders. See United States ex rel. Berman v. Craig, supra, 207 F.2d at 890; Olvera v. United States, 1955, 5 Cir., 223 F.2d 880, 883.

■ It is not necessary for the Court to decide whether the additional facts

14. 32 C.F.R. § 1642.14(b) provided:
"(b) The classification of a delinquent registrant who is classified in or reclassified into Class I-A or Class I-A-O under the provisions of this part may be reopened at any time before induction in the discretion of the local board without regard to the restrictions against reopening prescribed in § 1625.2 of this chapter."

15. In contrast, if the local board votes not to reopen the case (thus never reaching the stage of *reconsidering* the classification), the registrant has no right under either the statute or the regulations to appeal from this refusal to reopen. This lack of a right to appeal has been upheld as fair and adequate. Klubnikin v. United States, 1956, 9 Cir., 227 F.2d 87, cert. denied, 350 U.S. 975, 76 S.Ct. 453, 100 L.Ed. 846, motion for rehearing denied, 351 U.S. 915, 76 S.Ct. 701, 100 L.Ed. 1449; Stain v. United States, 1956, 9 Cir., 235 F.2d 339, 342 n. 7; United States v. Beaver, 1962, 4 Cir., 309 F.2d 273, 277, cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499; United States v. Majher, 1966, S.D.W.Va., 250 F.Supp. 106, 110.

presented by the defendant required the local board as a matter of law to reopen and consider anew the defendant's classification. The defendant, however, was entitled under 32 C.F.R. § 1625.4 to have such additional facts considered by the local board. In this case the members of the local board never met to consider, discuss, or vote as a board on defendant's request to have his case reopened. One of the board members, although not unavailable, was never consulted. And none of the board members actually read or had the defendant's letter read to him, with the possible exception of the chairman. This failure to meet and act as a board violated the implicit requirements of 32 C.F.R. § 1604.52a(d) and therefore of procedural due process. Section 1604.-52a(d) in pertinent part provided:[16]

> "A majority of the members of the local board * * * shall constitute a quorum for the transaction of business * * *. *A majority of the members * * * who are present at any meeting * * * at which a quorum is present shall decide any question or classification. * * *
>
> Every member * * * present shall vote on every question or classification.*" (Emphasis supplied)

Such disregard for the requirements of the regulation was arbitrary.

Furthermore, in light of the State Appeal Board's having once granted to defendant the status of a conscientious objector, this Court cannot rule as a matter of law that he was not entitled to such a classification. On the face of the record this Court is not in a position to decide whether the State Appeal Board, having recognized his status as a conscientious objector, simply placed defendant in that class which he had requested on his classification questionnaire or whether, instead, it specifically weighed the question whether he deserved I-A-O or I-O status and decided on the former.

Had the local board properly met and considered the defendant's request, it might have voted to reopen his case. Had that happened, the board might further, in reconsidering his case, have decided that he was entitled to the I-O classification. In any event, had the board reopened his case, defendant would have regained the rights to appear personally and to appeal the board's decision. 32 C.F.R. § 1625.13. This is so despite the fact that he had previously been declared a delinquent. 32 C.F.R. § 1642.14(a), (c).

Because the local board's actions foreclosed these possibilities, its subsequent order that defendant report for and submit to induction was void. The motion to acquit must therefore be granted as to Count II.

Had the board classified him I-O, defendant's delinquency status would have been rendered moot, since I-O registrants who fail to report for physical examinations when ordered are not classified as delinquents. See page 6, supra. Because this possibility was denied defendant by reason of the board's arbitrary action, his motion for judgment of acquittal is granted as to Count I as well.

In so ruling, the Court does not pass judgment on the merits of defendant's claim for conscientious objector status; nor does the Court intimate what decision the local board should have made had it properly considered the question of reopening his case; nor does the Court in any way intimate what decision the local board would or should have reached had it reopened his case and proceeded to reconsider his classification. The Court expresses no opinion on the credibility of defendant's statements to the local board. The credibility of the defendant as it bears on issues before the local board is a question exclusively for the local board

---

16. This section specifically speaks in terms of individual panels of multipaneled boards. The requirements herein laid down, however, are of general applicability.

to determine subject to such review as may be provided by law.

For the reasons stated the Court finds the defendant not guilty on both counts.