**UNITED STATES of America,**
**Appellee,**

v.

**Christian Winslow HAYDEN, Appellant.**

**No. 25803.**

United States Court of Appeals,
Ninth Circuit.

April 9, 1971.

Rehearing Denied July 26, 1971.

Jertberg, Circuit Judge, dissented in part, concurred in part and filed opinion.

Hugh R. Manes (argued), of Stewart, Finkel & Manes, Los Angeles, Cal., for appellant.

David Curnow (argued), Richard H. Kirschner, Richard L. Jaeger, Asst. U. S. Attys., David R. Nissen, Chief, Crim. Div., Robert L. Meyer, U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES, JERTBERG, and ELY, Circuit Judges.

ELY, Circuit Judge:

Hayden appeals from his conviction on two counts of an indictment charging him with having violated § 12 of the Universal Military Training and Service Act, 50 U.S.C. App. § 462(a). The separate offenses charged were failure to report for a pre-induction physical examination and failure to report for induction. The judgments must be reversed.

The facts are not in dispute. However, we think it desirable to review, in some detail, the unusual background of the prosecutions. Hayden urged his conscientious objector beliefs on his Local Board from the time he first registered in 1966. His Board consistently rejected his claims. His first I–A classification was issued April 4, 1967, despite the Board's failure previously to supply Hayden with a conscientious objector questionnaire (SSS Form 150), a duty imposed upon the Board by regulation. 32 C.F.R. § 1621.11.[1] Thus, it was necessary for Hayden to request that his classification be reopened in or-

---

1. The Board was put on notice of Hayden's conscientious objector claim by his signature to Series VIII of the classification questionnaire (SSS Form 100), completed by him March 10, 1967. Hayden's next communication from the Board was his classification notice, and that was received May 24, 1967, almost two months after the vote of the Board.

der to obtain the opportunity to detail his conscientious objection to war. Upon its receipt of the completed questionnaire and supportive documents, the Board again, on July 11, 1967, classified Hayden I–A. A month later, Hayden made a timely request for a personal appearance, and, on October 5, 1967, was notified that his appearance had been scheduled for October 17th. Hayden failed to appear as scheduled. Because the Board erroneously treated Hayden's request for a personal appearance as an appeal also, it sent his file to the Appeals Board, while continuing his I–A classification. The Appeals Board unanimously upheld the I–A classification on November 16, 1967, and Hayden was so notified by his Local Board on November 28, 1967.

On December 6, 1967, Hayden returned his classification notice to the Board, explaining that the day before his scheduled personal appearance, he had surrendered his draft card to the Attorney General. He further stated that he would thereafter refuse to cooperate with the Selective Service System "in any way" and that he would no longer carry any Selective Service documents. Based on this information, and on the advice of the State Director of Selective Service, the Board declared Hayden delinquent and ordered him for priority induction on March 5, 1968.

After Hayden failed to report on the specified date, he was indicted, on one count, for having violated 50 U.S.C. App. § 462(a), the same statute under which he was convicted in the present case. On that prior indictment, Hayden

was tried before District Judge Warren J. Ferguson, sitting without a jury. He was acquitted upon Judge Ferguson's emphatic determination that Hayden's conscientious objector claim was exceptionally well founded:

"[I]f there ever was a case in which the Court is compelled to find the defendant not guilty, this is [such] a case. * * * No person, no reasonable person who reads this file could come to any other conclusion except the fact that he [Hayden] is a true, sincere believer in a Supreme Being, he is opposed to killing and violence, and he is a true, dogmatic, ordinary, routine conscientious objector. * * "[2]

Pursuant to regulations, the Local Board was notified by the United States Attorney of Hayden's acquittal. The Board was also sent at least one copy of Judge Ferguson's opinion.[3] Notwithstanding this judicial determination that there was no basis in fact to support the I–A classification, the Local Board did not reclassify Hayden. Instead, it requested Hayden to appear for an "Informal Interview," in order "to develop further facts on which your Conscientious Objector claim is based, and the sincerity of such claim."

Hayden replied to his Board, in writing, stating that he did not believe that such an interview was necessary, inasmuch as Judge Ferguson had already ruled that he was a conscientious objector, and declining the invitation.[4] Upon receipt of this letter the Board again classified Hayden I–A. This time, a finding was inserted in the file that the record before the Board was insufficient

2. United States v. Hayden, crim. No. 1923, C.D.Cal. 9/24/68, reporter's transcript at 3–4 [hereinafter cited as *Hayden I*].

3. At oral argument, the court was informed by counsel that both Hayden and the United States Attorney had sent true copies of Judge Ferguson's opinion to the Board. For some reason, the Board apparently neglected to insert the opinion in Hayden's Selective Service file.

4. Hayden wrote:
 "Dear Miss Phillips & Board Members:
 This is to inform you that I must de-

cline your invitation to an Informal Interview on the morning of December 3, 1968. On September 24, 1968, Federal Judge Warren Ferguson stated that I was a Conscientious Objector, and should be classified as such. I believe his decision, and the material in the Selective Service file under my name provide you with more than enough evidence to make a decision regarding the matter of my classification. Thank you for your invitation. * * *"

to substantiate Hayden's I–O claim, and that an adverse inference was being drawn regarding sincerity from Hayden's refusal to accede to the invitation to appear for the "Informal Interview." Hayden did not pursue an appeal, and when the time for appeal expired, his Local Board, once more acting upon the advice of the State Director, ordered Hayden to submit himself for a pre-induction physical examination. His failure to appear therefor resulted in a declaration of delinquency and an order to report for priority induction. After Hayden failed to report, he was again indicted, and there followed the convictions from which he now appeals.

## I.

## FAILURE TO REPORT FOR INDUCTION

■ The Board's order for Hayden to report for induction was invalid, running afoul of the rule of Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970). There, the Supreme Court held that accelerated induction of Selective Service registrants, because of their delinquency under the regulations, has not been authorized by Congress. Here, it is hardly deniable, and, indeed, the Government does not deny, that Hayden's order to report came when it did because of his having been declared delinquent. This is irrefutably demonstrated by a notation in the Board's own minutes, "Delinquent— order for induction."

While it virtually concedes the applicability of Gutknecht, the Government attempts to avoid the effect of that authority by urging that its rule not be applied retroactively to Hayden's conviction, which preceded the issuance of Gutknecht by some months. However, the cases in our Circuit are clear: When the record affirmatively reflects accelerated induction, Gutknecht is to be retroactively applied. United States v. Pennington, 439 F.2d 145 (9th Cir. 1971); United States v. Browning, 423 F.2d 1201 (9th Cir. 1970); Gregory v. United States, 422 F.2d 1323 (9th Cir. 1970). Since, therefore, the Government's contention on this point is without merit, it follows that Hayden's conviction for failure to report for induction must be vacated.

## II.

## FAILURE TO REPORT FOR PRE-INDUCTION PHYSICAL EXAMINATION

### A. *Relevance of Misclassification.*

The Government argues that even if Hayden's conviction for failure to report for induction was wrong, we should nevertheless affirm the conviction for failure to report for a pre-induction physical examination. Even if the denial of Hayden's conscientious objector claim were without basis in fact, argues the Government, any misclassification was irrelevant to the issue of Hayden's alleged duty to report for an examination. We reject this argument.

The Government principally relies upon United States v. Zmuda, 423 F.2d 757 (3d Cir.), cert. denied, 398 U.S. 960, 90 S.Ct. 2176, 26 L.Ed.2d 545 (1970). There, the court, while reversing a conviction for failure to report for induction because of Gutknecht, affirmed the accused's conviction, on a second count, for having failed to report for a physical examination. The court was of the opinion that

"[t]he alleged invalidity of appellant's classification is not available as a defense to a prosecution for failing to report for a physical examination. The validity of a I–A classification has no relevance to the registrant's obligation to undergo an examination to determine his physical eligibility to serve in the armed forces. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969)."

423 F.2d at 759. The Zmuda court cited no other authority than McKart, nor did it further discuss the point. This is regrettable, for our very close examination convinces us that McKart does not sup-

port the position ascribed to it in *Zmuda* and here taken by the Government.[5]

McKart's exemption as a sole surviving son (Class IV–A) had been revoked by his Local Board. Because this revocation was the result of an erroneous interpretation of law, rather than an erroneous application of the "clear deferment standards," McKart was under a duty to report for his physical examination despite his entitlement to a IV–A classification. *See* United States v. Brandt, 435 F.2d 324 (9th Cir. 1970).

However, as we shall demonstrate, there is an exception to the general duty of registrants to report for physical examinations,[6] an exception applicable to registrants classified as conscientious objectors (I–O). As to these registrants, misclassification may deprive them of a substantial right—the right not to submit to a physical examination.

The position of the Selective Service concerning I–O registrants who fail to report for or to submit to an armed forces physical examination appears to be that *they shall nevertheless be treated in all respects as if they had taken such an examination and been found to be medically acceptable.* Authority for this approach is found in section 1660 of the Regulations:

"When a registrant in Class I–O has been found qualified for service in the Armed Forces after his armed forces physical examination *or when such a registrant has failed to report for or to submit to armed forces physical examination,* he shall within ten days after a Statement of Acceptability (DD Form 62) has been mailed to him by the local board or within ten days after he has failed to report for or to submit to armed forces physical ex-

amination, submit to the local board three types of civilian work contributing to the maintenance of the national health, safety, or interest as defined in section 1660.1, which he is qualified to do and which he offers to perform in lieu of induction into the Armed Forces. If the local board deems any one of these types of work to be appropriate, it *will* order the registrant to perform such work. \* \* \* "

SSS Reg. 1660.20(a), 32 C.F.R. § 1660.-20(a) (emphasis added). Thus, the Local Boards are advised:

"If the registrant is in Class I–O [and has failed to take a physical], *consider him for all purposes as if he had been physically and mentally examined and found acceptable* for military service and process him thereafter in the same manner as any other registrant in Class I–O who has been found acceptable for service after being given an armed forces physical examination."

Local Board Memorandum No. 14, para. 3(b) (issued November 19, 1948, as amended March 17, 1969) (emphasis added). The Local Boards are also told:

"A registrant classified in Class I–O shall be ordered to report for armed forces physical examination in the same manner as any other registrant. If he fails to report for or to submit to this examination, he does not thereby become delinquent but shall be available for assignment to appropriate civilian work in the same manner as if he had been found qualified after examination."

Local Board Memorandum 64, para. 3(a) (issued March 1, 1962, as amended September 12, 1968).

---

5. *McKart* concerned a one-count conviction for failure to report for induction. The Government argued that the reviewing court could not entertain the merits of McKart's allegedly erroneous classification, inasmuch as he had failed to exhaust his administrative remedies within the Selective Service System; to wit, failing to report for a physical examination and failing to appeal his classification. It was in rejecting this contention that Mr. Justice Marshall addressed himself to the effect of misclassification.

6. The general duty is outlined in 32 C.F.R. §§ 1628.10, 1628.11, and 1628.16.

Support for the position taken by the Service is also found in two reported opinions:

"It is not disputed, and this Court finds, that both classes of conscientious objectors—not only those who claim I–A–O status but also those who claim I–O status—are required under Selective Service procedures to be ordered by local draft boards to submit to physical examinations. 32 C.F.R. § 1628.10. However, those conscientious objectors who are classified I–O and who nevertheless fail to report as ordered for a physical examination * * * *are deemed to have met that requirement."*

United States v. Walsh, 279 F.Supp. 115 (D.Mass.1968) (emphasis added). *See also* United States v. Mendoza, 295 F. Supp. 673 (E.D.N.Y.1969).

 Registrants who take and pass physical examinations are not susceptible to prosecution, and since I–O registrants who fail to submit to physical examinations are treated as medically acceptable, they, too, should be immune from prosecution for the charge in question.[7] The Service cannot be permitted to violate, or ignore, its own regulations. United States v. Walsh, *supra*, 279 F.Supp. at 121.

The reason for the unique position of I–O registrants in this respect is simple. They are permanently ineligible for military service, no matter what the national emergency. Unlike IV–F registrants, who are similarly exempt, the physical examination has nothing to do with their ability, as I–O registrants, to serve. It would seem undeniable that the Government, therefore, cannot have the same interest in the physical condition of exempt conscientious objectors that it rightfully has in the conditions of those potentially eligible for induction.[8] While registrants with I–O classifications are available for civilian work in lieu of induction,

"[o]bviously the physical examination is not designed to test the qualifications of a I–O registrant to perform civilian work, but is intended only for his own benefit."

United States v. Mendoza, 295 F.Supp. at 683.[9]

The court's opinion in *Walsh, supra,* supports the foregoing. Walsh, a registrant classified I–A–O, was charged for his failure to report for an armed forces

---

7. The very form which the Selective Service itself employs to order registrants to take their physical examinations makes this distinction between I-O and differently classified registrants perfectly clear. Those who have been classified I-A and I-A-O are warned, via an "Important Notice" printed on the face of the form, that failure to report for or to submit to examination subjects them to a wide range of penalties, including possible fine and imprisonment. I-O registrants, however, are merely advised that:

"If you fail to report for or to submit to this examination, you will be subject to be ordered to perform civilian work in the same manner as if you had taken ·the examination and had been found qualified for military service."

SSS Form 223 (revised June 20, 1968).

8. There is some analogy in the fact that since a physical examination of a registrant who is not to be subjected to the rigors of military life is not so necessary, it has been held that the failure of the Government to provide a I-O reg-

istrant with a physical examination does not invalidate a subsequent order that he report for civilian work in lieu of induction. *See, e. g.,* Shoemaker v. United States, 413 F.2d 274 (9th Cir.), cert. denied, 396 U.S. 837, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969). If, because a physical examination of a I-O registrant is unnecesary, he has no right to demand the examination, the Selective Service authorities should have no greater power to order his submission for examination. The sword should cut both ways.

9. It is also possible that the Service may have recognized that many I-O registrants, due to their religious antipathy toward war, are unwilling to cooperate with a System associated with military aims. This may be another reason why the Service, wishing to avoid useless friction with I-O registrants concerning technical requirements, has, with the consent of Congress, generally excused the registrants of that class who have failed to report for physical examinations.

physical examination. Because of the peculiar nature of his conscientious objector beliefs, he had sought a classification in which he would not be required to submit to a physical examination or to perform medical work. Misunderstanding the advice given him by a government appeals agent, he requested and eventually received a I–A–O classification. When he received an order to report for a physical examination, he attempted to obtain the reopening of his file, explaining his problem to his Local Board. After his Board refused his request, for reasons which do not appear in the opinion, he then disobeyed the order to report and was indicted. Walsh was tried before the court, sitting without a jury, and in his case, the Government *conceded* that I–O registrants were not required to submit to physical examinations. The Chairman of Walsh's Local Board testified that he did not know this at the time the Board refused Walsh's request that his classification be reopened. Thus, the court reasoned that the Board might have refused to reopen solely because it did not realize that if a registrant were classified I–O, his religious views concerning physical examinations could be respected. If the Board had reopened, the court continued, it might have granted Walsh the requested I–O classification. Because prosecution of a I–O registrant for failure to report for a physical examination would be impermissible, the court concluded that the Board's refusal to reopen had deprived Walsh of highly significant procedural rights and that Walsh should be acquitted.

We emphasize our belief that the relevance of misclassification to a charge of failure to report for physical examination, where the appropriate classification is argued to be I–O, is not in any way inconsistent with anything written in *McKart*. The precise issue now under discussion did not arise in that case, as the classification argued for by McKart was IV–A, not I–O. It is the peculiar and unique attribute of the I–O

class, not the mere fact of misclassification, upon which we base our conclusion.

B. *Denial of Hayden's I–O Claim.*

In the unusual circumstances of this case, Hayden cannot be precluded from the benefit of our foregoing opinion because his Board had rejected his I–O claim and imposed a I–A classification. The Board may not abrogate procedural rights by arbitrary action. If Hayden was entitled to a I–O classification, he was also entitled to all the attendant rights and attributes of that classification, including exemption from the duty to take an armed forces physical examination. Our review of the record, including the opinion of District Judge Ferguson, convinces us that there was absolutely no basis in fact for the rejection of Hayden's claim for conscientious objector exemption.

In reaching this conclusion, we have not overlooked the proposition that judicial review of Selective Service Classifications is "the narrowest known to law." Bishop v. United States, 412 F.2d 1064, 1067 (9th Cir. 1969) (quoting from Blalock v. United States, 247 F.2d 615, 619 (4th Cir. 1957)). The Local Board need not build a record, and there need only be a "basis in fact" for a challenged classification. Furthermore,

> "[w]hen a reviewing court is considering whether a board's denial of a conscientious objector claim in a given case had basis in fact, the board's action is entitled to the support of any inference of sham or insincerity on the part of the registrant which the board could have drawn validly and fairly from the record upon which it acted."

Bradley v. United States, 218 F.2d 657, 661 (9th Cir.), reversed, 348 U.S. 967, 75 S.Ct. 532, 99 L.Ed. 754 (1954) (citation omitted). *See also* Bishop v. United States, *supra.*

■■ Nevertheless, Selective Service classifications are subject to judicial review. If a registrant presents a prima facie case for an exemption or a defer-

ment, his claim may not be rejected absent some objective facts, appearing in the record, justifying inferences which may have been drawn against him by the classifying Board. *See* Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1954); Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. Davila, 429 F.2d 481 (5th Cir. 1970); 'United States v. Haughton, 413 F.2d 736 (9th Cir. 1969); United States v. Washington, 392 F.2d 37, 39 (6th Cir. 1968). Thus, mere disbelief in the sincerity of a registrant, grounded on no objective evidence of insincerity, will not suffice to deny a registrant an exemption as a conscientious objector. Dickinson v. United States, *supra*; Parrott v. United States, 370 F.2d 388, 391 (9th Cir. 1966).

Here, as we noted in the beginning, Hayden's Local Board justified its denial of a I–O classification on the basis of a finding inserted in Hayden's file,[10] concerning the sincerity of his beliefs. Since this is the only recorded explanation of the Board's reasons for denying Hayden's claim, it must be assumed that it is complete. United States v. Haughton, *supra*.

The Board purported to rely both on the record and on Hayden's refusal to accept the invitation to be interviewed. However, it totally ignored the prior judicial history of Hayden's problems concerning his classification. A United States District Court, applying the same, narrow test of review which we have described, to the same record to which the Local Board addressed itself,

had previously declared that Hayden was a sincere, genuine conscientious objector.

"He is not a humanist. His conscientious belief is not a philosophical or a moral belief. It is a true spiritual, ordinary, routine religious belief."

"And why the draft board refused to see it is beyond my comprehension. * * * It got an awful lot of publicity, I guess, because of his father [11] and his outside activities. But he is a routine, ordinary person who is a conscientious objector, that is all." [12]

The Government argues that this judicial declaration was not "binding" on the Board. This is true, in the sense that no judicial decision can forever bar a Selective Service Board from altering a registrant's classification. But it should not be allowed to reimpose a classification which a federal court has invalidated unless there are newly disclosed facts or considerations adequately supportive of its action. If the Government is contending that the Board was not required to attach any significance whatsoever to Judge Ferguson's previous decision, we thoroughly disagree. Under traditional principles of collateral estoppel, we believe that no decided issue essential to the judgment in that litigation should be permitted again to be raised between Hayden and the United States in a criminal context. We are, of course, now faced with a new classification decision, one which must be independently reviewed. Nevertheless, to the extent that the new classification was based on the same record that had been carefully reviewed by

---

10. "We, the members of Local Board No. 95, reviewed the registrant's file and his letter of December 2, 1968 [declining the board's invitation to appear before it]. It is our decision to reopen and reclassify in Class I-A, since we are unable to determine the sincerety [sic] of his beliefs solely on the basis of the material in the file, and since we had no opportunity to observe the demeanor of the registrant and to question him concerning the sincerety [sic] of his claimed beliefs."

"The Board was of the opinion that the registrant's failure to appear before the Local Board to answer questions and to permit the Board to observe him and his demeanor, was an adverse fact showing that the registrant was not sufficiently sincere about his beliefs to appear before the Board."

11. Hayden's father is a prominent motion picture actor.

12. *Hayden I*, at 4–5.

Judge Ferguson, the Board should have foreclosed itself from any conclusion inconsistent with the judicial declaration before it.[13]

The gravamen of a conscientious objector claim is the sincerity, *vel non*, of the registrant. Witmer v. United States, *supra.* Here, Hayden's sincerity was unchallenged from the time he first registered until Judge Ferguson's judgment of acquittal was made. We must assume that had it been possible to draw any inference adverse to Hayden's sincerity, based on his record to the date of his first trial, such would have been urged before Judge Ferguson and would have altered the conclusion which he reached. But no such showing was attempted, nor do any facts, "objective" or otherwise, tending to cast doubt on Hayden's sincerity, appear anywhere in the record. The Boards, like the courts, must give weight to a registrant's expression of his religious feelings, United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and, here, the only possible new fact thought to justify the inference of Hayden's insincerity was the failure to appear for the "Informal Interview." From this, it is argued that Hayden was uncooperative.[14] But, one's lack of cooperation with the Selective Service System is not, of itself, a federal crime, and cannot supply the sole basis for the denial of an otherwise valid claim for exemption. Sicurella v. United States, 348 U.S. 385, 391, 75 S.Ct. 403, 99 L.Ed. 436 (1954); Kessler v. United States, 406 F.2d 151, 153 (5th Cir. 1969); *cf.* Woo v. United States, 350 F.2d 992, 994–995 (9th Cir. 1965).

Of more importance is our opinion that in this case, Hayden's failure to appear should not be equated with an uncooperative attitude of defiance. Hayden did not ignore the Board's invitation. He replied, promptly and courteously, reminding the Board of the declaration of the United States Court that he was entitled to a I–O classification. Hayden had no duty to appear. Such "courtesy" appearances were without statutory authority, and the Local Board memorandum which authorized them has since been rescinded.[15] Hayden was not informed that his failure to appear for the "courtesy" interview would, or might, prejudice him, gravely or at all. Indeed, a registrant's failure to avail himself of an informal, unauthorized procedure should not be seized upon as a basis for an inference, against a judicial declaration, that the registrant's professed beliefs are insincere.

When Hayden declined to accept the Board's invitation to appear, he expressly relied, as we think he was entitled to do, upon a valid judicial confirmation of the religious beliefs which he had been vainly urging upon his Local Board for two years. We simply cannot permit, in circumstances like these, an inference of Hayden's insincerity to be drawn merely because he sought, in unchallenged good faith, to rely upon the judgment of one of our District Courts.

Since the denial of Hayden's claim for conscientious objector exemp-

13. The Local Board ordered Hayden for his physical examination upon the advice of the State Director's office. In a letter written to the Board on January 20, 1969, the Director attempts an analysis of certain "defects" in Hayden's answers to the Conscientious Objector Questionnaire (SSS Form 150). However, the bulk of his letter reviewed material that had already been carefully considered by Judge Ferguson, and which should now be foreclosed from further consideration, except insofar as it sheds significant light on the events subsequent to Judge Ferguson's decision.

14. Letter from State Director to Local Board 95, *supra* note 13.

15. Local Board Memorandum No. 41 (rescinded August 27, 1970). The Memorandum was very careful to state that the interview did not satisfy the requirements of SSS Reg. 1624.1, 32 C.F.R. § 1624.1, pertaining to registrants' rights to personal appearances.

tion was without basis in fact,[16] his conviction for failure to report for a physical examination cannot stand.

The judgments of conviction are reversed. Upon remand, the indictment will be dismissed.

Reversed, with directions.

JERTBERG: Circuit Judge (concurring in part and dissenting in part.)

I am in complete agreement with the statement in the majority opinion that:

"The Board's order for Hayden to report for induction was invalid, running afoul of the rule of Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506 (1970)."

Therefore, I concur in the majority opinion reversing appellant's judgment of conviction for his failure to report for induction.

However, I must part company with the majority in its reasoning and action in reversing the judgment of conviction for failure to report for a preinduction physical examination.

The following is summarized from the majority opinion:

Appellant's first I–A classification was issued April 4, 1967; that appellant requested that his classification be reopened in order to detail his conscientious objection to war; that upon its receipt of the completed questionnaire and supporting documents, the Local Board, on July 11, 1967, again classified appellant I–A. Appellant made a timely request for personal appearance, and, on October 5, 1967, was notified that his appearance had been scheduled for October 17th; that appellant failed to appear as scheduled. Because the Board erroneously treated his request for a personal appearance as an appeal, also, it sent his file to the Appeals Board, while continuing his I–A classification. The Appeals Board unanimously upheld the I–A classification on November 16, 1967, and appellant was so notified by the Local Board on November 28, 1967.

On December 6, 1967, appellant returned his classification notice to the Board, explaining that the day before his scheduled appearance he had surrendered his draft card to the Attorney General, and further stated that he would thereafter refuse to cooperate with the Selective Service System "in any way" and he would no longer carry any Selective Service documents.

Appellant was ordered to report for induction on March 5, 1968. He failed to report for induction and was indicted for such failure. Appellant was acquitted of such offense and the Local Board was notified of such acquittal. The Board requested appellant to appear for an "Informal Interview," in order to "develop further facts on which your Conscientious Objector claim is based, and the sincerity of such claim."

Appellant replied to the Board in writing, stating that he did not believe that such an interview was necessary, and declined the invitation. Upon receipt of this letter the Board again reclassified appellant I–A, finding that the record before the Board was insufficient to substantiate appellant's I–O claim, and that an adverse inference was being drawn regarding

16. The Government suggests that we should not review the validity of Hayden's classification, inasmuch as Hayden did not exhaust his administrative remedies within the Selective Service System. However, neither the effect of Judge Ferguson's decision on subsequent reclassification decisions nor the legal sufficiency of Hayden's nonappearance at an Informal Interview as supporting an inference of incincerity are matters appropriate for the exercise of administrative discretion. These are matters of law, appropriate for consideration by the federal courts. *See* McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657 (1969); United States v. Davila, 429 F.2d 481 (5th Cir. 1970). A case such as this, wherein the facts are uncontested and no discretion is involved, is judicially reviewable whether the applicable law involves statute, administrative regulation, or court decision. *Cf.* Shea v. Mitchell, 421 F.2d 1162 (D.C. Cir. 1970).

appellant's sincerity from his refusal to accede to the invitation to appear for the "Informal Interview."

No appeal was taken by appellant from such I–A classification and when the time for appeal expired, the Board ordered appellant to submit himself for a pre-induction physical examination. Appellant failed to appear and thereafter was ordered to report for induction, and thereafter appellant was indicted for failure to appear for pre-induction physical examination and for failure to report for induction. Following trial before the court, he was convicted of both offenses.

It appears from the foregoing summary of the record that throughout the history of this litigation appellant's classification by the Board and the Appeal Board was I–A. No appeal was taken by appellant from the last order of the Board classifying him as I–A. He failed completely to exhaust his remedies within the Selective Service System.

Contrary to the view taken by the majority, I believe the decision in United States v. Zmuda, 423 F.2d 757 (3d Cir.), cert. denied, 398 U.S. 960, 90 S.Ct. 2176, 26 L.Ed.2d 545 (1970), from which a quotation appears in the majority opinion, to be convincingly persuasive that the majority erred in reversing appellant's judgment of conviction for failure to appear for a pre-induction physical examination.

The facts in *Zmuda* practically parallel the facts in the instant case, and in my view the following quotations from *Zmuda* apply with equal force to the case before us:

"The validity of a I–A classification has no relevance to the registrant's obligation to undergo an examination to determine his physical eligibility to serve in the armed forces. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Should the result of the examination reveal that the registrant is physically ineligible to serve, then his I–A classification would obviously be changed.

" * * *.

"Stripping the surplusage from the various arguments advanced on this point, the appellant's complaint is simply that the local board had no basis in fact for rejecting his conscientious objector claim. But in the posture of the record before us, we are precluded from inquiring as to whether there was a "basis in fact" for the I–A classification, or, conversely, whether Zmuda met his burden of proof in establishing a conscientious objector exemption. We are placed in this position because appellant failed to avail himself of the review procedures available within the selective service system for the rectification of what a registrant believes to be an improper classification. [Footnotes omitted.]

" * * *.

"We recognize that some may regard the application of the exhaustion requirement as an insensitive and inflexible formalism—a judicial preoccupation with form over substance. It should be remembered, however, that nothing is more basic to our jurisprudence than the constant application of procedural rules. It is what Mr. Justice Brandeis called 'due process in the primary sense.' Brinkerhoff-Faris Trust & Savings Co. v. Hill, 281 U.S. 673, 681, 50 S.Ct. 451, 454, 74 L.Ed. 1107 (1930). And when Congress has designated an administrative agency as the initial forum for the adjudication of contested rights, only a clear demonstration that recourse to the agency would be futile, self-defeating or judicially wasteful will justify the abandonment of the exhaustion requirement. No such demonstration has been made here. The appellant deliberately refused to utilize the administrative apparatus available to rectify what he considered unjust. He will not now be heard to complain of the denial of due process from a system he chose to ignore."

The majority states that *McKart, supra,* "does not support the position as-

cribed to it in *Zmuda,* and here taken by the government." [1] I believe that *McKart* bolsters the holding in *Zmuda.*

The precise holding in *McKart* was that exhaustion was not required in a claim for exemption as a sole surviving son because resolution of the claim called for a statutory legal interpretation not based on factual determinations or the exercise of any discretion by the Selective Service System. Unlike McKart, appellant's claim as a Conscientious Objector was not one, the resolution of which called for a statutory legal interpretation not based on factual determinations or the exercise of any discretion by the Selective Service. As pointed out below in *McKart,* conscientious objector claims require the application of expertise, or the exercise of discretion and only the Local and Appeals Board have the necessary expertise. The Supreme Court stated in *McKart,* at p. 198, 89 S.Ct. at p. 1665:

"In this sense, the issue is different from many Selective Service classification questions which do involve expertise or the exercise of discretion, both by the local boards and the appeal boards.[16]

"16. Conscientious objector claims, Military Selective Service Act of 1967, § 6(j), 81 Stat. 104, 50 U.S.C.App. § 456(j) (1964 ed., Supp. III), or deferments for those engaged in activities deemed 'necessary to the maintenance of the national health, safety, or interest,' id., § 6(h) (2), 81 Stat. 102, 50 U.S.C.App. § 456(h) (2) (1964 ed., Supp. III), would appear to be examples of questions requiring the application of expertise or the exercise of discretion. In such cases, the Selective Service System and the courts may have a stronger interest in having the question decided in the first instance by the local board and then by the appeal board, which considers the question anew. 32 CFR § 1626.26. The Selective Service System is empowered by Congress to make such discretionary determinations and only the local and appeal boards have the necessary expertise. See Thompson v. United States, 380 F.2d 86 (C.A. 10th Cir. 1967)."

Further from *McKart* at pages 201–202, 89 S.Ct. at page 1667:

"But more importantly a registrant is under a duty to comply with the order to report for a physical examination and may be criminally prosecuted for failure to comply. If the Government deems it important enough to the smooth functioning of the System to have unfit registrants weeded out at the earliest possible moment, it can enforce the duty to report for preinduction examinations by criminal sanctions. In the present case, it has not chosen to do so. Petitioner has not been prosecuted for failure to report for his examination; he has been prosecuted for failure to report for induction, a duty he claims he did not have." [Footnotes omitted.]

Further on page 203, 89 S.Ct. on page 1667:

"At the time *Falbo* [Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305] was decided the regulations provided that the pre-induction examination was to be given at the time the registrant responded to the order to report for induction or to the work camp. See Gibson v. United States, 329 U.S. 338, 67 S.Ct. 301, 91 L.Ed. 331 (1946). Accordingly, the Selective Service System had no way to enforce the duty to report for an examination other than by a prosecution for failure to report for induction. An invalid classification, if allowed to be raised, would have been a complete defense to that prosecution; *it would not be a defense today to a prosecution for failure to report for a pre-induction examination.*" [Italics added.]

The majority finds further support for its position that appellant was not required to exhaust his administrative remedies because of the decision of Judge Ferguson, acquitting him of the offense of failing to report for induction, which charge was contained in an earlier indictment. I do not believe that

Judge Ferguson's decision, collaterally or otherwise, estopped the Selective Service System from further proceedings subsequent to such decision. Congress empowered the Selective Service System to make such discretionary determinations. The courts cannot usurp the functions and duties assigned to the Selective Service System.

The majority assumes that Hayden's claim to a I–O classification had been completely established as a matter of law, notwithstanding his I–A classification by the Local and the Appeals Board, and the finding by the Local Board that the record before it was insufficient to establish appellant's I–O claim. In this connection the majority states there was nothing in the record tending to cast doubt on Hayden's sincerity.

The record discloses that throughout appellant chose to ignore the Selective Service System. He requested a personal appearance, which request was granted and a date fixed. He failed to appear as scheduled. He returned his classification card to the Local Board and explained that he had surrendered his draft card to the Attorney General, and that he would refuse to cooperate with the Selective Service System "in any way." Following Judge Ferguson's decision he was invited to appear personally before the Board. He declined the invitation stating that such appearance was not necessary.

The SSS Regulations 1660.20(a), the Local Board Memorandum No. 14, para. 3(b), as amended, and the Local Board Memorandum No. 64, para. 3(a), as amended, portions of which are quoted in the majority opinion, are not relevant. Such regulation and memoranda relate to a registrant who has been classified as I–O by his local board and not to appellant whose board classification was always that of I–A.

The reliance by the majority on two district court decisions, United States v. Mendoza, 295 F.Supp. 673 (E.D.N.Y., 1969), and United States v. Walsh, 279 F.Supp. 115 (D.Mass.,1968), are weak reeds to rest upon.

In *Walsh*,[2] the registrant was classified I–A–O by his Local Board and was charged for his failure to report for induction and for failure to report for a pre-induction physical examination. Walsh was acquitted of both counts at a trial to the court on the grounds of arbitrary action by the Local Board, and the denial of procedural due process. In *Walsh*, it is stated at p. 121:

"In so ruling, the Court does not pass judgment on the merits of defendant's claim for conscientious objector status; nor does the Court intimate what decision the local board should have made had it properly considered the question of reopening his case; nor does the Court in any way intimate what decision the local board would or should have reached had it reopened his case and proceeded to reconsider his classification."

In *Mendoza*, unlike the instant case, the registrant was classified I–O by the Local Board. In the instant case he was classified I–A.

The vice in the reasoning of the majority opinion lies in the fact that the majority erroneously usurps the function of the administrative agency which alone is charged with the duty of classifying registrants, by treating appellant as though he had been classified as a Conscientious Objector because, in the opinion of the majority, appellant was entitled to that status, notwithstanding the fact that throughout the history of this litigation appellant's classification remained that of I–A.

## SUPPLEMENTAL OPINION AND ORDER ON PETITION FOR REHEARING

ELY, Circuit Judge:

 The points made in the Petition for Rehearing, with one exception, are frivolous. Indeed, the merits of the majority opinion are barely discussed. The

2. A résumé of this case appears in the body of the majority opinion.

exception relates to Hayden's alleged failure to exhaust his administrative remedies and requires us to consider the effect of McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971), decided after the issuance of our opinion. It must be concluded that our opinion and *McGee* are easily reconcilable.

McGee was a registrant whose I–O claim was rejected by his local board but who did nothing further about it. He neither requested a personal appearance nor an appeal. Thus, when he urged misclassification as a defense to a charge following his subsequent failure to report for induction, he was asking the Court to assume a heavy burden. If he had prevailed, any registrant could then submit a carefully drawn Form 150, deliberately fail to pursue the claim through available administrative avenues, and yet nevertheless force the court to interpret a record empty of facts save for the registrant's own self-serving declarations.

Echoing *McKart,* however, *McGee* warns that the ordinary exhaustion requirement "is not to be applied inflexibly in all situations." 402 U.S. at 483, 91 S.Ct. at 1568, 29 L.Ed.2d at 52.

"After *McKart* the task for the courts, in deciding the applicability of the exhaustion doctrine to the circumstances of a particular case, is to ask 'whether allowing all similarly situated registrants to bypass [the administrative avenue in question] would seriously impair the Selective Service System's ability to perform its functions.' "

*Id.* at 484, 91 S.Ct. at 1568–69, 29 L.Ed. 2d at 53. In *McGee*, the court was forced to answer "yes" to the question, for every registrant who submits a carefully drawn Form 150 to his board would be "similarly situated" to McGee. In our case, however, Hayden is in a far different, extremely unique position. He not only submitted a Form 150, he appealed

his local board's denial of the claim therein made. Furthermore, his Appeals Board, satisfied with the fullness of the factual record before it, unanimously affirmed the decision of the Local Board. At this point, Hayden had clearly exhausted his remedies and had given the system every opportunity to correct its error, and to amplify the factual record. The full panoply of the administrative process having been brought to bear on Hayden's claim, the denial of his I–O claim was held, by a federal court, to have been without basis in fact.

It is this circumstance, the prior judicial resolution of Hayden's claim, based on a fully developed administrative record, which distinguishes his case from that of McGee. Essential to the determination that no basis in fact existed for the denial of Hayden's I–O claim were findings that Hayden had made out a prima facie case, that he was sincere, and that nothing in the record was inconsistent with his claim. His acquittal vindicated his I–O claim and occurred in the process of judicial review that is the narrowest known to the law. As our majority opinion demonstrates, nothing occurred after the definitive judicial decision which cast any doubt upon its continuing vitality. The blatant disregard of the court's decision, evidenced by a letter from the State Director to the Local Board attempting, in essence, to refute the Court's interpretation of the record, and evidenced by the Board's attempt to cast Hayden's good-faith reliance upon the decision as evidence of his insincerity, places this case in a unique posture.

Here, we do not deal with a registrant who, having made out a prima facie case, refuses to allow to the Board an inquiry into his sincerity. Hayden is a registrant whose sincerity has been attested by a federal District Court, after a trial in which the very issues being litigated herein were resolved in Hayden's favor. In the light of that trial, the subsequent approach taken by Hayden's Board is, at

its best, inexplicable.[1] McGee attempted to take advantage of his Board and to burden the courts. Here, Hayden's Board sought to take advantage of him, and to ignore the courts.

The Petition for Rehearing is Denied.

The suggestion for *en banc* rehearing is rejected. The full court has been advised of the suggestion for *en banc* reconsideration, has considered this supplemental opinion of the majority, as well as the dissenting opinion thereto, and no judge of the court has requested that a vote be taken on the suggestion for *en banc* rehearing. Fed.R.App.P. 35(b).

JERTBERG, Circuit Judge (dissenting):

I respectfully dissent from the Order of the majority in denying appellee's petition for rehearing and rejecting the suggestion for rehearing *en banc*.

Appellee does not seek rehearing with respect to the reversal by this Court of appellant's judgment of conviction for failure to report for induction. I joined the majority in such order of reversal.

Appellee's petition seeks rehearing only in respect to the order of this Court reversing appellant's conviction for failure to report for physical examination. I filed a dissenting opinion stating that in my opinion the judgment of conviction should be affirmed because of appellant's failure to exhaust his administrative remedies. I adhere to the views expressed therein and will not repeat them here.

The petition for rehearing should be granted and such rehearing should be *en banc*.

I also dissent from the views expressed in the Supplemental Opinion of the majority filed with its Order denying the petition for rehearing.

In its original opinion the majority reversed the judgment convicting appellant for failure to report for preinduction

physical examination because, under a prior indictment charging only that appellant failed to report for induction, Judge Ferguson, after trial, acquitted appellant of such charge and stated that in his opinion appellant was a conscientious objector. From such premise the majority concluded that the board's denial of appellant's C–O claim was without basis in fact, that appellant should have been classified C–O by the local board, and that if it had done so, appellant would not have been required to submit to a preinduction physical examination. In this connection the majority, in its original opinion, stated:

> "If Hayden was entitled to a I–O classification, he was also entitled to all the attendant rights and attributes of that classification, *including exemption from the duty to take an armed forces physical examination.*" [Emphasis added.]

In its Supplemental Opinion the majority, after attempting to distinguish the facts in the instant case from the facts appearing in the opinion of the Supreme Court in McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565 (1971), stated:

> "In our case, however, Hayden is in a far different, extremely unique position. He not only submitted a Form 150, he appealed his local board's denial of the claim therein made. Furthermore, his Appeals Board, satisfied with the fullness of the factual record before it, unanimouly affirmed the decision of the Local Board. At this point, Hayden had clearly exhausted his remedies and had given the system every opportunity to correct its error, and to amplify the factual record. The full panoply of the administrative process having been brought to bear on Hayden's claim, the denial of his I–O claim was held, by a federal court, to have been without basis in fact.

---

1. Another panel of our court has recently characterized it as "punitive". United States v. De La Parra, 445 F.2d 1405 (9th Cir., June 3, 1971). This motiva-

tion has been held, in another context, to be intolerable. Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970).

"It is this circumstance, the prior judicial resolution of Hayden's claim, based on a fully developed administrative record, which distinguishes his case from that of McGee."

The foregoing quotation does not present a fair and complete statement of the record before the local board when on December 3, 1968, the board denied appellant's C–O claim and reclassified appellant as I–A.

Following notice to the board that Judge Ferguson had acquitted appellant on the charge of failing to report for induction, the local board requested Hayden's presence for an interview, informing him that: "The primary purpose of the interview will be to develop further facts on which your Conscientious Objector claim is based, and the sincerity of such claim." Appellant replied to the board, in writing, stating that he did not believe that such interview was necessary, and declined the invitation.

On December 3, 1968, the local board reclassified him I–A stating:

"We the members of Local Board No. 95, reviewed the registrant's file and his letter of Dec. 2, 1968. It is our decision to reopen and reclassify in Class I–A, since we are unable to determine the sincerety (sic) of his beliefs solely on the basis of the material in the file, and since we had no opportunity to observe the demeanor of the registrant and to question him concerning the sincerety (sic) of his claimed beliefs.

"The Board was of the opinion that the registrant's failure to appear before the Local Board in person to answer questions and to permit the Board to observe him and his demeanor, was an adverse fact showing that the registrant was not sufficiently sincere about his beliefs to appear before the board."

On December 13, 1968, appellant was mailed notification of his new I–A classification, and was informed of his right to a personal appearance and an appeal relative to the denial of his I–O claim.

Appellant did not seek a personal appearance before the board, and he filed no appeal from his I–A classification.

In the above quotation from the Supplemental Opinion it is stated that:

"He [appellant] not only submitted a Form 150, he appealed his local board's denial of the claim therein made."

The record does not support the statement that appellant appealed his local board's denial of his claim. The record discloses that after appellant filed his Form 150, the local board on July 11, 1967, again classified appellant I–A. Appellant made a timely request for personal appearance, and on October 5, 1967, was notified that an appearance had been scheduled for October 17. Appellant failed to appear as scheduled. Because the board erroneously treated his request for a personal appearance as a request for appeal, also, it sent his file to the Appeals Board, while continuing his I–A classification. The Appeals Board unanimously upheld the I–A classification on November 16, 1967.

Also in the Supplemental Opinion appears the statement:

"Here, we do not deal with a registrant who, having made out a prima facie case, refuses to allow to the board an inquiry into his sincerity."

In my view the record is to the contrary.

The record discloses that appellant, after filing his C–O claim (Form 150), chose thereafter to ignore the Selective Service System. He requested a personal appearance, which request was granted and a date fixed. He failed to appear as scheduled. He returned his classification card to the local board and explained that he had surrendered his draft card to the Attorney General, and that he would refuse to cooperate with the Selective Service System "in any way." Following Judge Ferguson's decision he was invited to appear personally before the board. He declined the invitation stating that such appearance was not necessary.

**1382**

Such matters were before the local board on December 3, 1968, when it denied his C–O claim and reclassified appellant as I–A. Appellant deliberately refused throughout the proceedings to appear personally before the board in order to assist it in determining the sincerity of his C–O claim.

In my view the petition for rehearing should be granted in light of the teachings set forth in McGee v. United States, supra; McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); United States v. Zmuda, 423 F.2d 757 (3d Cir.), cert. denied, 398 U.S. 960, 90 S.Ct. 2176, 26 L.Ed.2d 545 (1970); and Lockhart v. United States, 420 F.2d 1143 (9th Cir. 1969) en banc.